## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

**JANE DOE,**                                               **CASE NO.:**
                                                            **FLA BAR NO.: 0739685**
        **Plaintiff,**

**v.**

**ROBERT A. HARDWICK, in his official**
**capacity as SHERIFF OF ST. JOHNS COUNTY;**
**MATTHEW CLINE, in his individual capacity;**
**JOSHUA WOOLSEY; WOOLSEY LAW PLLC,**
**with a fictitious name of WOOLSEY MORCOM PLLC;**
**CASEY WOOLSEY; WILLIAM LEE OWEN, III;**
**and STOP DOMESTIC VIOLENCE FLORIDA,**
**a Political Committee.**

        **Defendants,**
_____/

## <u>COMPLAINT</u>

Plaintiff, JANE DOE, hereby sues Defendant, ROBERT A. HARDWICK, in

his official capacity as SHERIFF, ST. JOHNS COUNTY; MATTHEW CLINE, in

his individual capacity; JOSHUA WOOLSEY, individually; WOOLSEY LAW

PLLC, with a fictitious name of WOOLSEY MORCOM PLLC; CASEY

WOOLSEY, individually;  WILLIAM LEE OWEN, III, individually; and STOP

DOMESTIC VIOLENCE FLORIDA, and alleges:

## NATURE OF THE ACTION

1.     This is a civil action seeking monetary damages, declaratory judgment, and legal, equitable, and injunctive relief against Defendants. This is an action brought under the United States Constitution, 42 U.S.C. § 1983, the Florida Constitution, the Florida Statutes, and the common laws of the State of Florida.

2.     This is an action involving claims which are, individually, in excess of Seventy- Five Thousand Dollars ($75,000.00).

## PARTIES

3.     At all times pertinent hereto, Plaintiff, JANE DOE, has been a resident of St. Johns, County, FL. She is *sui juris*.

4.     At all times pertinent hereto, Defendant, ROBERT A. HARDWICK, in his official capacity as SHERIFF, ST. JOHNS COUNTY, Florida (hereinafter "Sheriff" or "SJSO") has been organized and existing under the laws of Florida as a law enforcement agency known as the ST. JOHNS COUNTY SHERIFF'S OFFICE, and it is located in St. Johns County, Florida.

5.     At all times pertinent hereto, Defendant, MATTHEW CLINE, served as the Undersheriff (AKA "Chief of Staff") of the SJSO, subsequently becoming the agency's General Counsel (a position which he had previously held prior to becoming the Undersheriff), and he has been a resident of the State of Florida, in St.

Johns County. MATTHEW CLINE is being sued in this proceeding in his individual capacity. He is *sui juris*.

6.      At all times pertinent hereto, Defendant, JOSHUA WOOLSEY, individually, has been a resident of the State of Florida and/or his actions occurred in the State of Florida, within St. Johns County. He is *sui juris*.

7.      At all times pertinent hereto, Defendant, WOOLSEY LAW PLLC, with a fictitious name of WOOLSEY MORCOM PLLC, has been organized and existing under the laws of the State of Florida. It is *sui juris*.

8.      At all times pertinent hereto, Defendant, CASEY WOOLSEY, individually, has been a resident of the State of Florida and/or her actions occurred in the State of Florida, within St. Johns County. She is *sui juris*.

9.      At all times pertinent hereto, Defendant, WILLIAM LEE OWEN, III, individually, has been a resident of the State of Florida and/or his actions occurred in the State of Florida, within St. Johns County. As of the date of filing for this instant Complaint, he is listed as being employed in the Jacksonville law firm of Luks, Santaniello. He is *sui juris*.

10.      STOP DOMESTIC VIOLENCE FLORIDA is a political committee which has a registered mailing address of 115 East Park Avenue, Suite 1, in Tallahassee, and it has a registered agent, Kori Schott, with the same address. It is therefore *sui juris*.

## CONDITIONS PRECEDENT

11.    Plaintiff has satisfied all conditions precedent to bringing this action; in particular, on May 24, 2023, Plaintiff served the SJSO with a Chapter 768, Florida Statutes, notice of intent to sue.

## VENUE

12.    Venue is proper in St. Johns County as one or more of the events took place there, the parties engaged in professional work in St. Johns County directly related to the facts giving rise to these claims, and/or they continue to reside there.

## STATEMENT OF THE ULTIMATE FACTS

13.    On or about April 20, 2018, Plaintiff was the victim of a sexual battery by a stranger.

14.    Plaintiff had been out celebrating her recent marriage with some of her girlfriends the evening of April 19, 2018, prior to being sexually battered during the early morning hours of April 20th.

15.    After fleeing from the assailant, Plaintiff, who was in shock, flagged down a car and then found someone from whom to borrow a phone to be able to call a family member.

16.    Plaintiff's stepfather picked her up and at her request, and he drove her to her residence, where Plaintiff contacted her close friend who had previously been an assistant state attorney prosecuting sex crimes.

17.     Plaintiff's friend immediately came to her home and arranged for her to meet with a sexual assault nurse expert ("SANE") at the Family Life Center to have a rape kit conducted.

18.     Plaintiff's friend transported her to Family Life Center, where the SANE examined Plaintiff and asked her questions about what had occurred.

19.     The examination revealed that Plaintiff had suffered vaginal tearing and that her panties, which had been torn apart in the crotch, had been shoved all the way up her body to underneath her bra.

20.     After the examination and rape kit were completed, Plaintiff (who is an attorney practicing in, among other areas, criminal defense) contacted the assistant of the SJSO undersheriff, Defendant MATTHEW CLINE ("CLINE") via the assistant's personal cell phone.

21.     CLINES's assistant and Plaintiff's friend arranged for Plaintiff to meet with SJSO detectives so that Plaintiff could officially report the sexual battery and be interviewed.

22.     When Plaintiff met with the SJSO detectives, they questioned her about the facts of the incident and the geographical location where she believed the sexual battery occurred.

23.    The investigators also took a photograph of bruising on Plaintiff's wrist which was caused by the assailant holding Plaintiff down while he sexually battered her.

24.    The sexual battery was deeply traumatic for Plaintiff, both physically and emotionally.

25.    The investigators assured Plaintiff that if she wanted to stop the investigation at any time that it would be completely within her control to end it.

26.    Due to the arduous and difficult nature of Plaintiff's recovery, which impacted not only herself but her emotional support system of her husband, her mother, stepfather, and the aforementioned close friend, while she was also trying to care for her two sons and meeting her professional obligations to the clients of her law practice, Plaintiff made the agonizing decision to not pursue criminal charges against the assailant.

27.    Another major factor in Plaintiff's decision to not move forward with prosecution of the assailant was to keep the incident private and to avoid having to disclose the sexual battery to her children, family, friends, and legal colleagues.

28.    As noted parenthetically, *supra* in paragraph 20, Plaintiff practices in the area of criminal defense, and consequently she understands how difficult a trial would be on her and her family, as well as the fact that a prosecution would mean

that all of those she worked with would be informed that she had been sexually battered.

29.    Due to severe emotional stress and all of the aforementioned considerations, Plaintiff contacted the SJSO detectives and requested that they cease the investigation and close the case.

30.    Pursuant to Plaintiff's request, the SJSO ceased its investigation prior to completing it, and the report/case was closed.

31.    Plaintiff chose to keep the matter private even from many of her close friends, colleagues, and family members, including her own father.

32.    Due to Plaintiff being the victim in a sexual battery case, her name and all identifiable information were to be kept confidential, based upon the United States and Florida Constitutions' right to privacy, Marsy's Law, and specific Florida Statutes, addressed *infra*, which either outrightly require confidentiality unless waived, or which exempt the identity of victims, and specifically sexual battery victims, from public records requests.

33.    At the time that the events underlying this lawsuit transpired, Defendant JOSHUA WOOLSEY, an attorney, ran a law practice with his wife, CASEY WOOLSEY, who is also an attorney.

34.     The practice is known as Defendant "WOOLSEY LAW FIRM, PLLC," with a fictitious name of "WOOLSEY MORCOM, PLLC" (hereinafter "WOOLSEY MORCOM.")

35.     According to a document later filed by JOSHUA WOOLSEY, WOOLSEY MORCOM had a "special relationship" with the SJSO, in that, through a representation agreement, WOOLSEY MORCOM represented SJSO deputies in officer-involved shooting investigations.

36.     On or about September 1, 2020, CASEY WOOLSEY filed to become a candidate for a county court judge position in St. Johns County.

37.     In the spring of 2021, Plaintiff filed to run for the same judicial seat, and she was CASEY WOOLSEY's sole opponent.

38.     The undersheriff of the SJSO, CLINE, who is also an attorney, knew Plaintiff in a personal capacity.

39.     At some point between April 2018 and June 2022, CLINE maliciously fabricated a rumor, which he then gossiped to non-SJSO personnel, accusing Plaintiff of falsely reporting a sexual battery, which, unbeknownst to Plaintiff at that time, spread throughout the legal community in which she works.

40.     At some point, JOSHUA and CASEY WOOLSEY became aware of this rumor.

8

41.     JOSHUA WOOLSEY then made a public records request to SJSO for documents related to this rumor.

42.     When the public records request did not produce the results JOSHUA WOOLSEY wanted, he specifically requested the individual sexual battery report, thus reflecting that JOSHUA WOOLSEY was already aware that this report existed.

43.     On June 10, 2022, at 10:07 a.m., CLINE texted Plaintiff and asked her if she had time to meet with him at his office.

44.     Plaintiff, uncertain of why CLINE was making this unusual request, replied, "Um sure. I will make time. I need to be at my office by 1:30 so does anytime before 1 work?"

45.     CLINE said anytime would work, so Plaintiff drove to the SJSO soon thereafter.

46.     After Plaintiff arrived at the SJSO, CLINE told Plaintiff that JOSHUA WOOLSEY had filed a public records request to obtain the report of the sexual battery committed upon Plaintiff, and moreover, CLINE stated that he had let JOSHUA WOOLSEY read the report, but he stated that he had not given JOSHUA WOOLSEY a copy.

47.     Plaintiff later learned that CLINE had allowed JOSHUA WOOLSEY to read the sexual battery investigation report completely unredacted.

48.     CLINE then provided Plaintiff a copy of the investigative report, which she herself had never seen.

49.     On the copy of the report provided to Plaintiff, CLINE had taken an orange highlighter and had bracketed the section entitled "Complainant," which contained Plaintiff's name, date of birth, physical identifying attributes such as her sex, height, and weight, her home and her work addresses, and her phone numbers.

50.     CLINE had also highlighted Plaintiff's name everywhere that it was written throughout the report, a total of 60 times.

51.     CLINE explained to Plaintiff that the highlighted information was what he believed he had to redact pursuant to FS 119.071(2)(h), which, in pertinent part, prohibits the release of information that would reveal the identity of a victim of any sexual offense, prior to release.

52.     At this time, Plaintiff still had no idea that CLINE had started the rumor that Plaintiff had supposedly falsely reported the sexual battery, and notably, CLINE continued to act as if he were in distress about having to release the report, and he expressed that he was concerned for Plaintiff's welfare.

53.     In fact, CLINE acted so upset that Plaintiff had to console CLINE, such as reassuring him that she would be OK, and thanking him for trying to help her.

54.     The offense report mentions that a rape kit had been conducted.

55.     Investigators never retrieved the rape kit due to Plaintiff terminating the investigation.

56.     The offense report unequivocally states that "all investigative efforts [were] ceased at the request of [Plaintiff]" and that no further action would be taken.

57.     The report reflected that two days after she was told that the investigators had identified the alleged assailant, Plaintiff decided that she did not want to further pursue the matter, and at her request, and only due to her request, the the SJSO closed the investigation.

58.     Text messages reveal that following the meeting with CLINE, Plaintiff texted CLINE and told him "I appreciate you[,]" to which he replied, "Ok. Take time to read and process it before you let another soul look at it please."

59.     That same day, Plaintiff hired an attorney to protect her privacy in what she had been told by CLINE was a Chapter 119 public records request made by JOSHUA WOOLSEY.

60.     Plaintiff's attorney emailed CLINE and told him that there was no good faith basis for the report to be released, and that pursuant to Marsy's Law, "if the basis for a request for public records is to intimidate and/or harass then the information requested cannot be provided."

61.     Although CLINE had already highlighted information that he believed was required to be redacted pursuant to the statute protecting sexual crime victims,

CLINE proceeded to argue with Plaintiff's attorney as to whether Plaintiff constituted a victim under the law and was entitled to an exemption from JOSHUA WOOLSEY's public records request.

62.    A June 16, 2020, email chain demonstrates that after JOSHUA WOOLSEY was informed of Plaintiff's position that she was entitled to exemption from the public records request, JOSHUA WOOLSEY responded that he "aware of no exemption or confidential provision which would apply to this report" and that "[Plaintiff's attorney] relies on Marsy's Law, Article I, Section 16 and Florida Statutes 119.071, but fails to articulate or even address how [Plaintiff] fits the definition of a 'crime victim.'"

63.    JOSHUA WOOLSEY then continued to argue that Plaintiff was not a victim and that she should not be afforded any victims' legal protections.

64.    According to the same email chain, it appears that because JOSHUA WOOLSEY continued to pressure CLINE to release the investigative report, CLINE requested that Plaintiff provide her copy of the rape kit examination to him--thus requiring Plaintiff to prove to the SJSO (beyond that which was already set out in the SJSO's own report) that she was a victim, before the SJSO would afford her exemption from JOSHUA WOOLSEY's public records request.

65.    Despite the fact that there was ample evidence in the offense report, and that CLINE himself had already stated that she was afforded redaction protections,

Plaintiff was forced to provide CLINE with the results of her rape kit in an effort to prove to CLINE that she indeed qualified as a victim under the law, and that the case was only closed at her request.

66.     A June 17, 2022, email from JOSHUA WOOLSEY to CLINE 1) proves that the investigative report had "already been inspected by [him, i.e., JOSHUA WOOLSEY] pursuant to Florida's public records law[;]" and 2) that JOSHUA WOOLSEY claimed that the SJSO had written on the report, coding with the term "unfounded," although nowhere on the report is the coding of "unfounded."

67.     In this same email, JOSHUA WOOLSEY continued to belittle Plaintiff's counsel, accusing him of "ignor[ing] the actual facts of this case" and accusing Plaintiff of producing the rape kit results only then, in an effort to thwart his public records request.[1]

68.     On Friday, June 17, 2022, CLINE wrote a letter, which is itself a public record, and he emailed said letter to JOSHUA WOOLSEY and Plaintiff's counsel.

---

[1]This email chain, besides doing many things, utterly begs the questions of not only how did JOSHUA WOOLSEY come to know about the existence of the investigative report, but how did he intend to explain how he came to know of its existence, and most importantly of all, for what good faith reason did he--the husband of Plaintiff's judicial seat opponent--want the report, if not for sheer harassment and belittlement to undermine Plaintiff's campaign.

69.    In the letter, CLINE specifically identified Plaintiff as the complainant in the report and stated that he was directing his investigators to "unlock the report which will allow it to be produced by the Records Division as a public record."

70.    CLINE also wrote in the letter that because Plaintiff had produced the rape kit examination records, which constituted "documented evidence by a medical professional of an injury to her vagina" that the SJSO would "make the appropriate redactions" and release the report.

71.    CLINE inferred that Plaintiff was only entitled to the redactions due to the production of the rape kit, even though he had already stated in the original meeting with Plaintiff that she was entitled to the redaction.

72.    Due to the statements and actions by CLINE and JOSHUA WOOLSEY, on June 20, 2022, at 7:02 a.m., Plaintiff was forced to file in the circuit court a Verified Motion for Emergency Temporary Injunction against the SJSO, to stop the release of the investigative report based upon Marsy's Law protections.

73.    In the Emergency Motion, Plaintiff reported to the court that JOSHUA WOOLSEY, whom she noted is the husband of Plaintiff's opponent, CASEY WOOLSEY, had made a public records request for the investigative report for the sexual battery, and that CLINE had admitted that he had allowed JOSHUA WOOLSEY to read the report, but he had claimed that he had not yet given him a hard copy.

14

74.     The Motion noted that JOSHUA WOOLSEY "and/or the law firm[] of which he is a partner is/are contractual agents of the [SJSO]," because he and/or his law firm represented deputies during internal affairs investigations.

75.     The Motion explained that SJSO personnel had recently informed Plaintiff that, for purposes of crime statistics reporting, it routinely codes cases that are not prosecuted as "'unfounded to close them out administratively but is not in any way a factual finding on the merits of the underlying investigation[,]" despite the fact that it is well known within the law enforcement industry that use of "unfounded" as a code is not in compliance with best practices, because it improperly reflects that a determination on the factual allegation[s] has been made.

76.     The Motion informed the court that "[o]n June 16, 2022, [JOSHUA WOOLSEY] sent a response accusing [Plaintiff] of falsely reporting a crime and again insisting on the release of the report stating that [Plaintiff] is not a victim, and therefore has no rights under Marsy's law."

77.     Plaintiff's Motion further explained to the court that, even after the SJSO informed JOSHUA WOOLSEY of the contents of the rape kit, he continued to insist that Plaintiff was not a victim, and that she had falsely reported the sexual battery, and then the SJSO "issued a written opinion signed by [CLINE] identifying [Plaintiff] as the subject matter of the report, but stating that it would redact

identifying information under Chapter 119 of the Florida Statutes before releasing same to [JOSHUA WOOLSEY]."

78.   The Motion expressly pointed out to the court, "It is unknown how [JOSHUA WOOLSEY] was aware of the incident. The incident would not have been included in any public records request of the [Plaintiff]'s name due to the petitioner's identifying information being redacted. However, [JOSHUA WOOLSEY] was still able to request the specific incident and confirm the identity of [Plaintiff] as the complainant from the sheriff's office."

79.   As to the coding of "unfounded," the Motion stated "It is unknown how [JOSHUA WOOLSEY] knows of the closing code information as no such code is found on the report that the [SJSO] seeks to disclose."

80.   The Motion then referenced the underlying pleading which sought a declaration that Plaintiff is entitled to the protections of Marsy's law, and an injunction to enjoin the SJSO, and any of its contractors, and specifically to include any attorneys employed at the WOOLSEY LAW FIRM, from "releasing, disseminating, acknowledging, or in any way referencing" the sexual battery investigation report and the incident which spurred its generation.

81.   After being notified of and e-served with the emergency pleading, but before the court had ruled, SJSO released the report.

16

82.     Later that same day, the court granted the Motion after finding that Plaintiff would suffer irreparable harm if the investigative report were to be released; that there was no other adequate remedy of law; and, importantly, that she had a "substantial likelihood of success on the merits," because the cited "facts are consistent with a victim of sexual battery[.]"

83.     As to those facts, the court specifically noted that Plaintiff had "endured a sexual abuse response examination conducted by a sexual assault nurse examiner within hours of the incident who found vaginal tearing," as well as "an injury to her wrist that was documented by law enforcement[.]"

84.     The court further noted that Plaintiff's "underwear was ripped as a result of the incident" and that she had "fled and flagged down a vehicle to take her to safety."

85.     The court then enjoined, until further order of the court, the SJSO and any employee of the WOOLSEY LAW FIRM from releasing, disseminating, acknowledging, or in any way referencing not only the investigative report and the incident underlying it, but also the "current litigation" pertaining to the injunction.

86.     On June 22, 2022, the WOOLSEY LAW FIRM filed a Motion to Intervene and Request for Expedited Hearing, asserting that the order enjoining it was an unconstitutional prior restraint on speech.

87.    Specifically, the intervention motion argued that enjoining the WOOLSEY LAW FIRM and its employees "[f]or no apparent reason other than the submission by one of its principals of a public records request pursuant to Chapter 119 of the Florida Statutes, the [F]irst [A]mendment rights of [the WOOLSEY LAW FIRM] and its employees have already been impaired through this litigation."

88.    The WOOLSEY LAW FIRM requested an expedited consideration of its motion and noted that "[t]o be certain, [the WOOLSEY LAW FIRM] anticipates filing a motion to dissolve or modify the temporary injunction."

89.    Plaintiff objected to the intervention, arguing that the WOOLSEY LAW FIRM did not possess "an interest of such a direct and immediate character that the intervenor will gain or lose by the direct legal operation and effect of the judgment[,]" and moreover, the WOOLSEY LAW FIRM was not an "indispensable or necessary party to the action and [did] not have a sufficient interest in the case to justify intervention."

90.    Plaintiff noted that the WOOLSEY LAW FIRM's "clear 'interest' and/or intent in obtaining this protected information is to publicly disseminate the contents of the records to harass, humiliate, and intimidate [Plaintiff.]"

91.    The WOOLSEY LAW FIRM responded that it was not a contractual agent of the SJSO because it did not represent the SJSO, but instead, the SJSO only "pays [the WOOLSEY LAW FIRM] to represent individual deputies who face

disciplinary investigations[;] i.e., [the WOOLSEY LAW FIRM] provides legal services which are *adversarial* to [the SJSO]."

92. Attached to the response was a retainer letter stating that the SJSO had retained the WOOLSEY LAW FIRM "to represent the deputies of the [SJSO] . . . during internal affairs investigations, including, but not limited to, hearings, reviews, arbitrations, interviews and investigations."

93. On June 20, 2022, JOSHUA WOOLSEY, sent an email to the judicial assistant of the judge presiding over the case, complaining that he, his firm, and his wife, referenced as Plaintiff's "political opponent", were unfairly enjoined from being able to discuss the information within the offense report.

94. On June 23, 2022, the court *sua sponte* issued a corrected order and enjoined only the SJSO from releasing, disseminating, or acknowledging or in any way referencing the investigative report or the underlying incident.

95. On June 24, 2022, a hearing was held on the motion to intervene, and during it, the court specifically found that Plaintiff is a victim, and therefore, the court precluded the SJSO from releasing the offense report to anyone without a court order, and it denied the motion to intervene.

96. On June 29, 2022, the court rendered a written order from said hearing on the WOOLSEY LAW FIRM's intervention motion, denying the motion and reaffirming that Plaintiff is a victim as contemplated under Marsy's Law as well as

pursuant to statutory law pertaining to general crime, and specifically to sexual battery, victims.

97.     Notably, as it was concluded that the WOOLSEY LAW FIRM was not a contractor of the SJSO, the court clarified that the temporary injunction applied to the SJSO, but not to the WOOLSEY LAW FIRM, after Plaintiff's counsel confirmed agreement with this.

98.     On June 30, 2022, the WOOLSEY LAW FIRM then filed a Motion to Tax Attorney's Fees and Costs, arguing that the injunction had been wrongfully issued against it, and that the court's June 29, 2022, order effectively constituted the court's dissolution of the injunction against it, thus having been "wrongly issued" and therefore allowing it to "seek full measure of damages"--which the WOOLSEY LAW FIRM asserted constituted more than $17,000 in attorney's fees and costs.

99.     On July 1, 2022, a supporter of CASEY WOOLSEY, William Masson, filed a petition for mandamus against the SJSO, requesting release of the sexual battery investigation report; despite the Marsy's Law requirement that the SJSO notify Plaintiff of Masson's request for the sexual battery investigation report, it failed to do so.

100.   On August 16, 2022, the court held a hearing on said petition and on September 19, 2022, the court granted the petition.

101.   Petitioner never received notice of said petition, hearing, or order.

102.   On August 20, 2022, CASEY WOOLSEY stated directly to Plaintiff that she  knew and agreed with everything that her husband, JOSHUA WOOLSEY, had said regarding his accusations that Plaintiff had falsely reported the sexual battery, and that she was not ashamed of anything that her campaign had done, and she even went so far as to taunt Plaintiff for being sexually battered.

103.   On February 6, 2023, the court denied the WOOLSEY LAW FIRM's motion, after finding that the firm did not have to incur any attorneys' fees; the firm had never filed any motion to dissolve the injunction; there had been no adjudication on the merits; and moreover, that Plaintiff had not acted in bad faith when she had sought the injunction.[2]

104.   JOSHUA WOOLSEY, CASEY WOOLSEY, and one of their friends and supporters, Defendant WILLIAM LEE OWEN, III, then, with malice, told others in the community that Plaintiff had falsely reported that she had been sexually battered to the SJSO.

105.   A person or persons supporting CASEY WOOLSEY and her campaign, including OWEN, then telephoned some of Plaintiff's supporters and untruthfully stated to these members of the public that Plaintiff had made a false allegation of

---

[2] JOSHUA WOOLSEY and the WOOLSEY LAW FIRM then appealed the denial of attorneys' fees and costs to the appellate court, where the matter remains pending as of the filing of this instant Complaint.

sexual battery with the SJSO and that Plaintiff was a liar, and they called her slanderous words impugning her integrity and morals.

106.   This same person or persons, including OWEN, then disseminated the confidential case number of the SJSO lawsuit, the incident report number of the SJSO sexual battery investigation, and the date that the sexual battery had occurred, and they encouraged the public to request a copy of the sexual battery investigation from the SJSO, while also simultaneously noting that due to an injunction the SJSO would likely not be able to release the sexual battery report, but nonetheless encouraging members of the public to request the investigation report.

107.   Next, an organization registered as a political committee with the intentionally misrepresented and misleading name of "Stop Domestic Violence Florida" ("SDVF") then sent flyers to voters, which asserted that Plaintiff was "anti police" because she had "sued the St. Johns County Sheriff's Office[,]" when, in actuality, she had actually filed for the injunction to stop the SJSO from releasing the sexual battery investigation report, which JOSHUA WOOLSEY, CASEY WOOLSEY, OWEN, and others intended to use to harass and belittle Plaintiff, for CASEY WOOLSEY'S political gain.

108.   Further, the SDVF's flyers stated "After filing to run, [Plaintiff] sued the Sheriff to tie up production of public records from her past[,]" which was a reference to the injunction proceeding, and moreover, the flyers contained the name

and case number of that injunction proceeding, which, pursuant to the court's order, was confidential.

109.   Any average voter might easily believe that "Stop Domestic Violence Florida" is a nonprofit organization that seeks to protect the rights of victims of domestic violence, but the group does no such work; instead, there is no record activity of the organization engaging in any actual work on behalf of domestic violence victims, and the group's name is yet another instance of a name specifically calculated and designed to mislead the public as to the actual purpose of the entity.

110.   SDVF is not listed as a direct donor to the CASEY WOOLSEY campaign, although a dozen other entities with the exact same address as Stop Domestic Violence Florida--115 East Park Avenue, Suite 1, Tallahassee, 32301-- *are* listed as direct donors to her campaign.

111.   All tortious conduct as stated in this complaint was conducted to undermine Plaintiff's ability to run a campaign, and to aid the judicial campaign of CASEY WOOLSEY, at all costs and even in contravention of the judicial canons.

112.   As of the time of filing this instant Complaint, CLINE is still employed at the SJSO.

113.   Plaintiff has retained the undersigned to represent her interests in this cause and is obligated to pay a fee for these services.  Defendants should be made to pay said fee under the laws referenced above.

## COUNT I
## COMMON LAW NEGLIGENCE
### (Against Defendant ST. JOHNS COUNTY SHERIFF'S OFFICE)

114.   Paragraphs 1, 2, 3, 4, 5, 39, 42-85, 95, 96, 99, 100, 101, 112, and 113 are re-alleged and incorporated herein by reference.

115.   This count sets forth a claim against Defendant ST. JOHNS COUNTY SHERIFF'S OFFICE for common law negligence. Defendant ST. JOHNS COUNTY SHERIFF'S OFFICE knew or should have known that Plaintiff was within a zone of risk related to contact with its agents/employees.

116.   Defendant ST. JOHNS COUNTY SHERIFF'S OFFICE owed a duty of care to Plaintiff due to the nature of the relationship between Plaintiff and Defendant ST. JOHNS COUNTY SHERIFF'S OFFICE and/or Defendant ST. JOHNS COUNTY SHERIFF'S OFFICE had a special relationship with Plaintiff and, consequently, a duty of care was attendant thereto. Alternatively, legal duties devolved upon Defendant ST. JOHNS COUNTY SHERIFF'S OFFICE because Plaintiff was in the foreseeable zone of risk to be harmed by the actions thereof.

117.   Defendant ST. JOHNS COUNTY SHERIFF'S OFFICE further breached its duty to properly supervise its employee and agents, to ensure the safety of Plaintiff and/or to properly investigate the circumstances of criminal and/or tortious activity, and to comply with the law regarding protecting the identity of crime victims and here specifically, the victim of a sexual battery.

118.   The actions of Defendant ST. JOHNS COUNTY SHERIFF'S OFFICE as complained of herein were "operational" functions, i.e., functions that were not necessary to or inherent in policymaking or planning, that merely reflected secondary decisions as to how policies or plans were to be implemented.

119.   As a direct and proximate result of the above unlawful acts and omissions, Plaintiff sustained economic damages, including lost income, sustained emotional pain, anguish, humiliation, insult, indignity, loss of self-esteem, inconvenience and hurt, all because of the actions of Defendant ST. JOHNS COUNTY SHERIFF'S OFFICE, and she is therefore entitled to compensatory damages.

**COUNT II**
**NEGLIGENT SUPERVISION**
**(Against Defendant ST. JOHNS COUNTY SHERIFF'S OFFICE)**

120.   Paragraphs 1, 2, 3, 4, 5, 11, 12, 38, 39, 43-53, 56-66, 68-73, 75, 77-85, 99, 100, 101, 112, and 113 are re-alleged and incorporated herein by reference. This Count is pled in the alternative.

121.   This count sets forth a claim against Defendant ST. JOHNS COUNTY SHERIFF'S OFFICE for negligent supervision.

122.   Defendant ST. JOHNS COUNTY SHERIFF'S OFFICE breached its duty to properly supervise its employee and other officers, employees, and agents. To wit, employee MATTHEW CLINE told and/or confirmed with JOSHUA WOOLSEY about the existence of the sexual battery investigative report which was

supposed to remain confidential, and then provided, in the least, an unredacted copy of the investigative report to JOSHUA WOOLSEY for his review, and JOSHUA WOOLSEY then, along with his wife, CASEY WOOLSEY, employees of the WOOLSEY LAW FIRM, and others of their supporters, including but not limited to WILLIAM LEE OWEN, III, twisted the information to harass, besmirch, belittle, and defame Plaintiff to undermine her campaign and aid CASEY WOOLSEY at any cost, even in contradiction of the judicial canons.

123.   The breach of this duty to properly supervise MATTHEW CLINE and other employees and agents resulted in damages and injury to Plaintiff.

124.   Defendant ST. JOHNS COUNTY SHERIFF'S OFFICE knew or should have known that the actions, omissions, and derelictions of its officers, employees, and agents could cause injury to Plaintiff.

125.   Defendant ST. JOHNS COUNTY SHERIFF'S OFFICE breached its duties to supervise its employees and agents while on duty and to take appropriate disciplinary actions against said employees and agents.

126.   As a direct and proximate result of the above unlawful acts and omissions, Plaintiff sustained damages, including emotional pain, anguish, humiliation, insult, indignity, loss of self-esteem and inconvenience and hurt and are therefore entitled to compensatory damages pursuant to the above provisions.

## COUNT III
## NEGLIGENT RETENTION

**(Against ST. JOHNS COUNTY SHERIFF'S OFFICE)**

127.   Paragraphs 1, 2, 3, 4, 5, 11, 12, 38, 39, 43-53, 56-66, 68-73, 75, 77-85, 99, 100, 101, 112,  and 113 are re-alleged and incorporated herein by reference.  This Count is pled in the alternative.

128.   This count sets forth a claim against Defendant ST. JOHNS COUNTY SHERIFF'S OFFICE for negligent retention.

129.   Defendant SHERIFF ROBERT A. HARDWICK in his official capacity as the Sheriff of the ST. JOHNS COUNTY SHERIFF'S OFFICE, breached its duty to properly discipline Defendant MATTHEW CLINE and other officers, employees, and agents, and instead negligently kept Defendant MATTHEW CLINE on staff and failed to administer discipline up to and including termination where it was warranted, and Plaintiff was in the foreseeable zone of risk attached thereto.

130.   Defendant's lack of a policy or lack of proper implementation thereof regarding employee's behavior and appropriate disciplinary actions therefore allowed Defendant MATTHEW CLINE to retain employment even after he engaged in the conduct described more fully above.

131.   The breach of this duty to properly discipline or terminate Defendant MATTHEW CLINE and other officers, employees and agents resulted in damages and injury to Plaintiff. Defendant SHERIFF ROBERT A. HARDWICK knew or

should have known that the actions, omissions, and derelictions of its officers, employees, and agents when left unchecked, could, and did, cause injury to Plaintiff.

132.   As a direct and proximate result of the above unlawful acts and omissions, Plaintiff sustained damages, including emotional pain, anguish, humiliation, insult, indignity, loss of self-esteem and inconvenience and hurt, and she is therefore entitled to compensatory damages pursuant to the above provisions.

**COUNT IV**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**(Against ST. JOHNS COUNTY SHERIFF'S OFFICE)**

133.   Paragraphs 1 through 113 are hereby re-alleged and incorporated herein by reference.  Specific paragraphs – 1-5, 39, 42-85, 95, 96, 99, 100, 101, 111, 112, 113.

134.   This count sets forth a claim against a governmental entity, Defendant ST. JOHNS COUNTY SHERIFF'S OFFICE for negligent infliction of emotional distress resulting from actions herein that are "operational" level decision-making activities. As such, Defendant ST. JOHNS COUNTY SHERIFF'S OFFICE is not immune from tort liability stemming from these incidents and in accordance with Article X, Section 13 of the Florida Constitution, Defendant ST. JOHNS COUNTY SHERIFF'S OFFICE has waived sovereign immunity from liability in these torts.

135.   Defendant ST. JOHNS COUNTY SHERIFF'S OFFICE's negligent conduct described hereinabove and incorporated into this Count caused severe emotional distress to Plaintiff.

136.   Plaintiff suffered a physical impact and/or injury as described hereinabove and incorporated into this count, such that she suffered and continues to suffer psychological trauma in the form of severe anxiety, depression, and/or stress.

137.   As a direct and proximate result of Defendant ST. JOHNS COUNTY SHERIFF'S OFFICE's conduct described above, Plaintiff has been damaged, which damages include: emotional distress, mental pain and suffering, inconvenience, bodily injury, mental anguish, loss of enjoyment of life, and other pecuniary and non-pecuniary losses including attorneys' fees, and other benefits. These damages have occurred in the past and are permanent and continuing.

### COUNT V
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
**(Against MATTHEW CLINE, individually; JOSHUA WOOLSEY; CASEY WOOLSEY; WILLIAM LEE OWEN, III, and STOP DOMESTIC VIOLENCE FLORIDA )**

138.   Paragraphs 1 through 113 are hereby re-alleged and incorporated herein by reference.

139.   This count sets forth a claim against Defendants MATTHEW CLINE, individually and while acting outside of the course and scope of his employment;

JOSHUA WOOLSEY; CASEY WOOLSEY; WILLIAM LEE OWEN, III; and STOP DOMESTIC VIOLENCE FLORIDA, for negligent infliction of emotional distress resulting from actions described more specifically in the attendant paragraphs 1-3, 5, 6, 8, 9, 10, 33, 39, 40-53, 61, 72, 75, 81, 93, 99-102, 104-113.

140. Defendants MATTHEW CLINE, individually, and while acting outside of the course and scope of his employment; JOSHUA WOOLSEY; CASEY WOOLSEY; WILLIAM LEE OWEN, III; and STOP DOMESTIC VIOLENCE FLORIDA's negligent conduct described hereinabove and incorporated into this Count, caused severe emotional distress to Plaintiff.141. Plaintiff suffered a physical impact and/or injury as described hereinabove and incorporated into this count, such that she suffered and continues to suffer psychological trauma in the form of severe anxiety, depression, and/or stress.

141. As a direct and proximate result of Defendants MATTHEW CLINE, individually and while acting outside of the course and scope of his employment; JOSHUA WOOLSEY; CASEY WOOLSEY; WILLIAM LEE OWEN, III; and STOP DOMESTIC VIOLENCE FLORIDA's conduct described more fully above, Plaintiff has been damaged, which damages include: emotional distress, mental pain and suffering, inconvenience, bodily injury, mental anguish, loss of enjoyment of life, and other pecuniary and non-pecuniary losses including attorneys' fees, and

other benefits. These damages have occurred in the past and are permanent and continuing.

## COUNT VI
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(Against MATTHEW CLINE, individually; JOSHUA WOOLSEY; CASEY WOOLSEY; WILLIAM LEE OWEN III; and WOOLSEY LAW PLLC)

142.   Paragraphs 1 through 113 are hereby re-alleged and incorporated herein by reference.

143.   This count sets forth a claim against Defendants MATTHEW CLINE, individually, and while acting outside the course and scope of his employment; JOSHUA WOOLSEY; CASEY WOOLSEY; WILLIAM LEE OWEN III; and WOOLSEY LAW PLLC, for intentional infliction of emotional distress.

144.   The conduct of Defendants MATTHEW CLINE, individually, and while acting outside the course and scope of his employment; JOSHUA WOOLSEY; CASEY WOOLSEY; WILLIAM LEE OWEN III, and WOOLSEY LAW PLLC, as described above in paragraphs 1, 2, 3, 5-9, 33, 34, 39-72, 75, 81, 82, 93, 98-102, 104, 105, 106, and 111, of harassing, disparaging, humiliating, and defaming Plaintiff, was intentionally and recklessly conducted, and Defendants knew or should have known that emotional distress would likely result.

145.   The conduct described in the incorporated paragraphs was and is outrageous; that is, it goes beyond all bounds of decency and is and ought to be regarded as odious and utterly intolerable in a civilized community.

146.   The conduct described above directly and proximately caused Plaintiff's injuries in that it directly, and in a natural and continuous sequence, produced or contributed to such injuries.

147.   As a direct and proximate result of the foregoing, Plaintiff has suffered severe and ongoing emotional distress, mental disturbance, fright, revulsion, humiliation, emotional and psychological pain and suffering, mental anguish, inconvenience, and loss of capacity for the enjoyment of life, along with consequential damages as a result of the severe distress. Said losses, injuries, and expenses are either permanent or continuing in nature and Plaintiff will continue to suffer same in the future.

**COUNT VII**
**<u>DEFAMATION</u>**
**(Against Defendants ST. JOHNS COUNTY SHERIFF'S OFFICE;**
**MATTHEW CLINE, individually; JOSHUA WOOLSEY; CASEY**
**WOOLSEY; and WILLIAM LEE OWEN, III)**

148.   Paragraphs 1 through 113 are re-alleged and are incorporated herein by reference.

149.   This count sets forth a claim against Defendants ST. JOHNS CONTY SHERIFF'S OFFICE; MATTHEW CLINE, in his individual capacity and while acting outside the course and scope of his employment; JOSHUA WOOLSEY; CASEY WOOLSEY, and WILLIAM LEE OWEN, III, for defamation.

150.   The ST. JOHNS COUNTY SHERIFF'S OFFICE; MATTHEW CLINE, in his individual capacity and while acting outside of the course and scope of his employment; JOSHUA WOOLSEY; CASEY WOOLSEY; and WILLIAM LEE OWEN, III, published and/or caused to be published or allowed to be published false statements about Plaintiff to third parties as set forth in part above in paragraphs 1-6, 8, 9, 11, 33, 34, 40, 41, 42, 56, 57, 60, 61, 62, 63, 66, 67, 71, 75, 82, 93, 102, and 104-111.

151.   These statements made by the ST. JOHNS COUNTY SHERIFF'S OFFICE; MATTHEW CLINE, individually and while acting outside of the course and scope of his employment; JOSHUA WOOLSEY; CASEY WOOLSEY; and WILLIAM LEE OWEN, III, were malicious and intended to harm Plaintiff. Alternatively, the ST. JOHNS COUNTY SHERIFF'S OFFICE; MATTHEW CLINE, individually and while acting outside of the course and scope of his employment; JOSHUA WOOLSEY; CASEY WOOLSEY; and WILLIAM LEE OWEN, III; and MATTHEW CLINE were negligent in publishing these statements, and/or published these statements with knowledge that they were false and/or published these statements with reckless disregard as to the statements' falsity.

152.   The statements referred to above directly and proximately caused harm to Plaintiff's reputation in the community, subjected Plaintiff to distrust, ridicule,

contempt or disgrace and/or tended to injure Plaintiff in Plaintiff's trade or profession.

153.   These statements have deterred others from associating with Plaintiff and are actionable on their face. The communications made by the ST. JOHNS COUNTY SHERIFF'S OFFICE; MATTHEW CLINE, individually and while acting outside the course and scope of his employment; JOSHUA WOOLSEY; CASEY WOOLSEY; and WILLIAM LEE OWEN, III, imputed to Plaintiff conduct, characteristics, and/or conditions incompatible with the exercise of Plaintiff's lawful business, trade, profession, and office.

154. Alternatively, the ST. JOHNS COUNTY SHERIFF'S OFFICE; MATTHEW CLINE, individually and while acting outside the course and scope of his employment; JOSHUA WOOLSEY; CASEY WOOLSEY; and WILLIAM LEE OWEN, III, engaged in slander and libel per quod and Plaintiff is entitled to damages as a consequence thereof.

155.   The ST. JOHNS COUNTY SHERIFF'S OFFICE; MATTHEW CLINE, individually and while acting outside the course and scope of his employment; JOSHUA WOOLSEY; CASEY WOOLSEY; and WILLIAM LEE OWEN, III, did not publish these statements in good faith.

156.   As a result of the falsity of the statements made by the ST. JOHNS COUNTY SHERIFF'S OFFICE; MATTHEW CLINE, individually and while

acting outside the course and scope of his employment; JOSHUA WOOLSEY; CASEY WOOLSEY; and WILLIAM LEE OWEN, III, as set forth in part above and the publication thereof, Plaintiff has suffered damages which include, without limitation, special and general damages. The ST. JOHNS COUNTY SHERIFF'S OFFICE; MATTHEW CLINE, individually and while acting outside the course and scope of his employment; JOSHUA WOOLSEY; CASEY WOOLSEY; and WILLIAM LEE OWEN, III; engaged in slander and libel per se which are actionable on their face and general damages are presumed.

157. Alternatively, the ST. JOHNS COUNTY SHERIFF'S OFFICE; MATTHEW CLINE, individually and while acting outside the course and scope of his employment; JOSHUA WOOLSEY; CASEY WOOLSEY; and WILLIAM LEE OWEN, III, engaged in slander and libel per quod and Plaintiff is entitled to damages as a consequence thereof. The communications made by the ST. JOHNS COUNTY SHERIFF'S OFFICE; MATTHEW CLINE, individually and while acting outside the course and scope of his employment; JOSHUA WOOLSEY; CASEY WOOLSEY; and WILLIAM LEE OWEN, III, imputed to Plaintiff conduct which is incompatible with her functioning as a member of her community and occupation. Few good, decent, or honorable people want to have business relationships with a person possessing the qualities attributed to Plaintiff by the ST. JOHNS COUNTY SHERIFF'S OFFICE; MATTHEW CLINE, individually and while acting outside

the course and scope of his employment; JOSHUA WOOLSEY; CASEY WOOLSEY; and WILLIAM LEE OWEN, III, serving them in a personal or professional capacity.

158.   As a result of the defamatory statements, Plaintiff has suffered extreme humiliation, embarrassment, mental anguish, pain and suffering, inconvenience, loss of consortium, lost capacity for enjoyment of life, loss of business and profits, loss of reputation, good standing in the community and other tangible and intangible damages. These damages have occurred in the past and the present, and they are reasonably expected to continue into the future.

## COUNT VIII
## DEFAMATION BY IMPLICATION
(**Against MATTHEW CLINE, individually; JOSHUA WOOLSEY; CASEY WOOLSEY; WILLIAM LEE OWEN, III; and STOP DOMESTIC VIOLENCE FLORIDA**)

159.   Paragraphs 1 through 113 are re-alleged and are incorporated herein by reference.

160.   This count sets forth a claim against Defendants MATTHEW CLINE, in his individual capacity and while acting outside the course and scope of his employment; JOSHUA WOOLSEY; CASEY WOOLSEY; WILLIAM LEE OWEN, III; and STOP DOMESTIC VIOLENCE FLORIDA, for defamation by implication.

161.   Defendants MATTHEW CLINE, in his individual capacity and while acting outside the course and scope of his employment; JOSHUA WOOLSEY; CASEY WOOLSEY; WILLIAM LEE OWEN, III; and STOP DOMESTIC VIOLENCE FLORIDA, knowingly and willingly published or caused to be published, or recklessly or negligently published, statements about Plaintiff that are not true or substantially true, and which could reasonably be construed as defamatory.

162.   The statements have created the false implications that Plaintiff is, as stated in its flyer, "anti-law enforcement" and was in litigation with the sheriff's office to try to hide something she had done, as opposed to enforcing her own rights as a victim.

163.   These statements, as set forth here and in more detail above in paragraphs 1, 2, 3, 5, 6, 8, 9, 10, 11, 33, 34, 40, 41, 42, 56, 57, 60-67, 71, 75, 82, 93, 102, and 104-111, have created the implications that Plaintiff is untruthful and has even committed a crime by filing a false report with law enforcement.

164.   These challenged statements reasonably create implications that are not true or even substantially true.

165.   The implications drawn from the challenged statements convey the assertions of objective facts and not opinions.

166.   These challenged statements could reasonably be deemed as defamatory and such statements have injured Plaintiff's personal reputation and have spilled over into her professional reputation as detailed herein.

167.   These defamatory statements and implications have falsely associated and continue to falsely associate Plaintiff with behavior viewed as abhorrent in any community.

168.   The defamatory statements made by MATTHEW CLINE, in his individual capacity and while acting outside the course and scope of his employment; JOSHUA WOOLSEY; CASEY WOOLSEY; WILLIAM LEE OWEN, III; and STOP DOMESTIC VIOLENCE FLORIDA, have subjected Plaintiff to public contempt, ridicule, and disgrace.

169.   The defamatory statements and implications made by MATTHEW CLINE, in his individual capacity and while acting outside the course and scope of his employment; JOSHUA WOOLSEY; CASEY WOOLSEY; WILLIAM LEE OWEN, III; and STOP DOMESTIC VIOLENCE FLORIDA, have injured Plaintiff in her personal reputation and have spilled over into her profession and in her desired profession by causing her to lose business relationships and business opportunities, and is expected to cause her to lose business relationships and business opportunities in the future.

**COUNT IX**
**CIVIL CONSPIRACY TO COMMIT DEFAMATION**

**(Against MATTHEW CLINE, individually; JOSHUA WOOLSEY; CASEY WOOLSEY; WILLIAM LEE OWEN, III; and STOP DOMESTIC VIOLENCE FLORIDA)**

170.   Paragraphs 1 through 113 are hereby re-alleged and incorporated herein by reference. Specific Paragraphs: 1, 2, 3, 5, 6, 8, 9, 10, 32, 33-53, 56, 59-71, 75, 76, 77, 78, 79, 81, 82, 93, 99-102, 104-112.

171.   Defendants MATTHEW CLINE, individually and while acting outside the course and scope of his employment; JOSHUA WOOLSEY; CASEY WOOLSEY; WILLIAM LEE OWEN, III; and STOP DOMESTIC VIOLENCE FLORIDA, acted in concert with these identified and other as of yet unidentified John Does and Jane Does defendants to commit an unlawful act, or to commit a lawful act by unlawful means, to wit, to obtain and distribute an investigative report which was per law and policy required to remain confidential, to twist the content of the investigative report to besmirch, belittle, and defame Plaintiff to paint her as a liar, and to undermine her campaign, and to have her drop out of the campaign, as set forth more fully above.

172.   Defendants MATTHEW CLINE, individually and while acting outside the course and scope of his employment; JOSHUA WOOLSEY; CASEY WOOLSEY; WILLIAM LEE OWEN, III; and STOP DOMESTIC VIOLENCE FLORIDA, formed an agreement between them to inflict a wrong against or injury

upon Plaintiff, and one or more of these Defendants engaged in an overt act that resulted in damages to Plaintiff.

173.  Plaintiff has sufficiently pled prima facie counts of Defamation and Defamation by Implication, thereby constituting prima facie cases of Civil Conspiracy to commit said underlying defamatory tortious activity.

174.  Two or more of these individually named Defendants agreed or conspired, expressly or by implication, with the goal of unlawfully or lawfully but in an unlawful manner engaging in Defamation and Defamation by Implication against Plaintiff.

175.  One or more members of this conspiracy performed an overt act in pursuance of this goal and as a direct and proximate result of said conspiracy and acts committed in pursuance thereto, these individually named Defendants damaged Plaintiff.

176.  As a direct and proximate result of the above unlawful acts and omissions, Plaintiff was injured and sustained economic damages, including lost income, lost prestige, lost potential employment and good standing in the community; she has lost the capacity for the enjoyment of life; sustained severe emotional pain, anguish, humiliation, insult, indignity, loss of self-esteem, inconvenience and hurt, because of these individually named Defendants' actions, and she is therefore entitled to compensatory damages pursuant to the above

provisions. Plaintiff's damages are continuous; they have occurred in the past, are occurring in the present, and will continue to occur in the future.

177.   Further, as set forth in detail, *supra*, based upon the intentional misconduct of Defendants MATTHEW CLINE, individually and while acting outside the course and scope of his employment; JOSHUA WOOLSEY; CASEY WOOLSEY; WILLIAM LEE OWEN, III; and STOP DOMESTIC VIOLENCE FLORIDA, which demonstrates that they had actual knowledge of the wrongfulness of their conduct and the high probability that injury or damage to Plaintiff would result, yet despite this, they intentionally pursued that course of conduct, resulting in injury or damage to Plaintiff; or, in the alternative, the conduct of these Defendants was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons--here, Plaintiff.

178.   As a result of the defamatory statements, Plaintiff has suffered extreme humiliation, embarrassment, mental anguish, pain and suffering, inconvenience, loss of consortium, lost capacity for enjoyment of life, loss of business and profits, loss of reputation, good standing in the community and other tangible and intangible damages. These damages have occurred in the past and the present, and they are reasonably expected to continue into the future.

**COUNT X**
**INVASION OF PRIVACY--PUBLIC DISCLOSURE OF PRIVATE FACTS**
**(Against ST. JOHNS COUNTY SHERIFF'S OFFICE)**

179.   Paragraphs 1 through 113 are hereby re-alleged and incorporated herein by reference.  Specific Paragraphs: 1, 2, 3, 4, 5, 39, 40, 41, 42, 46, 47, 48, 49, 50, 51, 66, 68, 69, 70, 71, 72, 78, 79, 81 and 82.

180.   The distribution of the sexual battery investigative report identified *supra*, by the ST. JOHNS COUNTY SHERIFF'S OFFICE, in both redacted and unredacted form, was an invasion of Plaintiff's solitude and privacy.

181.   The invasion of privacy described above, directly and proximately caused Plaintiff's injuries in that it directly, and in a natural and continuous sequence, produced or contributed to such injuries.

182.   As a direct and proximate result of the above unlawful acts and omissions, Plaintiff was injured and sustained economic damages, including lost income, lost prestige, lost potential employment and good standing in the community; she has lost the capacity for the enjoyment of life; sustained severe emotional pain, anguish, humiliation, insult, indignity, loss of self-esteem, inconvenience and hurt, because of these individually named Defendants' actions, and she is therefore entitled to compensatory damages pursuant to the above provisions. Said losses, injuries, and expenses are either permanent or continuing in nature and Plaintiff will continue to suffer same in the future.

**COUNT XI**
**<u>DEPRIVATION OF CIVIL RIGHTS, 42 U.S.C. § 1983, DUE PROCESS</u>**
**(Against ST. JOHNS COUNTY SHERIFF'S OFFICE)**

183.   Paragraphs 1 through 113 are hereby re-alleged and incorporated herein by reference. Specific Paragraphs: 1, 2, 3, 4, 5, 39, 40, 41, 42, 46, 47, 48, 49, 50, 51, 66, 68, 69, 70, 71, 72, 78, 79, 81, 82, 99, 100, 101 and 104-111.

184.   Defendant ST. JOHNS COUNTY SHERIFF'S OFFICE has engaged in actions or policies that have resulted in the deprivation of Plaintiff's constitutional right to due process under the Fourteenth Amendment to the United States Constitution.

185.   While acting individually, jointly, and in conspiracy, as well as under color of law and within the scope of their employment, Defendant ST. JOHNS COUNTY SHERIFF'S OFFICE deprived Plaintiff of her right of privacy guaranteed by the United States Constitution, by working together to collectively deprive Plaintiff of due process including protections under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

186.   Defendant ST. JOHNS COUNTY SHERIFF'S OFFICE, through its actions or policies, has failed to afford Plaintiff the fundamental principles of due process guaranteed by the Constitution.

187.   At some point between April 2018 and June 2022, Defendant ST. JOHNS COUNTY SHERIFF'S OFFICE, knowingly and intentionally relayed sensitive information pertaining to Plaintiff's interests to co-Defendant, JOSHUA WOOLSEY.

188.   The sensitive information relayed by Defendant was of a nature that could reasonably foreseeably be used in a manner adverse to Plaintiff's interests and rights.

189.   By relaying said information to third parties, Defendant ST. JOHNS COUNTY SHERIFF'S OFFICE violated Plaintiff's rights to procedural and substantive due process under the Fourteenth Amendment to the United States Constitution.

190.   Defendant's actions have resulted in a clear infringement of the Plaintiff's constitutional rights, causing significant harm, distress, and prejudice.

191.   Defendant ST. JOHNS COUNTY SHERIFF'S OFFICE has deprived Plaintiff of her rights by disclosing personal and sensitive information concerning an incident in which she was a victim, to co-Defendant JOSHUA WOOLSEY. This information was subsequently disseminated to others by co-Defendant JOSHUA WOOLSEY to other third parties.

192.   As a direct and proximate result of the above unlawful acts and omissions, Plaintiff was injured and sustained economic damages, including lost income, lost prestige, lost potential employment and good standing in the community; she has lost the capacity for the enjoyment of life; sustained severe emotional pain, anguish, humiliation, insult, indignity, loss of self-esteem, inconvenience and hurt, because of these individually named Defendants' actions,

and she is therefore entitled to compensatory damages pursuant to the above provisions. Said losses, injuries, and expenses are either permanent or continuing in nature and Plaintiff will continue to suffer same in the future.

**COUNT XII**
**VIOLATION OF ART. I, § 16(b)(1), (2) & (5), FLA. CONST. ("MARSY'S LAW")**
**(Against ST. JOHNS COUNTY SHERIFF'S OFFICE)**

193.   Paragraphs 1 through 113 are hereby re-alleged and incorporated herein by reference. Specific Paragraphs: 1, 2, 3, 4, 5, 39, 40, 41, 42, 46, 47, 48, 49, 50, 51, 66, 68, 69, 70, 71, 72, 78, 79, 81 and 82, 99, 100, and 101.

194.   Defendant ST. JOHNS COUNTY SHERIFF'S OFFICE violated Article I, Section 16(b)(1), (2) & (5) of the Florida Constitution, also known as "Marsy's Law."

195.   Article I, Section 16(b)(1), (2) & (5) of the Florida Constitution, also known as "Marsy's Law," provides Plaintiff the right to due process and to be treated with fairness and respect for her dignity; the right to be free from intimidation, harassment, and abuse; and the right to prevent the disclosure of information or records that could be used to locate or harass Plaintiff or Plaintiff's family, or which could disclose confidential or privileged information.

196.   At some point between April 2018 and June 2022, Defendant ST. JOHNS COUNTY SHERIFF'S OFFICE intentionally and/or recklessly communicated the identity of a sexual crime victim and the factual information

underlying the reporting of a sexual battery, i.e., Plaintiff and her personal, private information, to co-Defendant JOSHUA WOOLSEY.

197.   Defendants' actions constitute a violation of Article I, Section 16(b)(1), (2) & (5) of the Florida Constitution.

198.   The Defendan's actions as described above constitute a violation of the rights afforded to the Plaintiff under Marsy's Law.

199.   Plaintiff is entitled to injunctive relief restraining Defendant ST. JOHNS COUNTY SHERIFF'S OFFICE from further violating Plaintiff's rights under Marsy's Law.

200.   As a direct and proximate result of the above unlawful acts and omissions, Plaintiff was injured and sustained economic damages, including lost income, lost prestige, lost potential employment and good standing in the community; she has lost the capacity for the enjoyment of life; sustained severe emotional pain, anguish, humiliation, insult, indignity, loss of self-esteem, inconvenience and hurt, because of these individually named Defendants' actions, and she is therefore entitled to compensatory damages pursuant to the above provisions. Said losses, injuries, and expenses are either permanent or continuing in nature and Plaintiff will continue to suffer same in the future.

**COUNT XIII**
**VIOLATION OF § 794.026, FLA. STAT. (CIVIL RIGHT OF ACTION FOR COMMUNICATING THE IDENTITY OF A SEXUAL CRIME VICTIM)**
**(Against ST. JOHNS COUNTY SHERIFF'S OFFICE)**

201.   Paragraphs 1 through 113 are re-alleged and incorporated herein by reference. Specific Paragraphs: 1, 2, 3, 4, 5, 39, 40, 41, 42, 46, 47, 48, 49, 50, 51, 66, 68, 69, 70, 71, 72, 78, 79, 81 and 82.

202.   This count sets forth a claim against Defendants ST. JOHNS COUNTY SHERIFF'S OFFICE for its violation of § 794.026, FLA. STAT., which establishes a civil right of action for communicating the identity of a sexual crime victim.

203.   On or around April 20, 2018, Plaintiff reported to Defendant ST. JOHNS COUNTY SHERIFF'S OFFICE that she had been the victim of a sexual battery.

204.   At some point between April 2018 and June 2022, Defendant ST. JOHNS COUNTY SHERIFF'S OFFICE intentionally and/or recklessly communicated the identity of a sexual crime victim and the factual information underlying the reporting of a sexual battery, i.e., Plaintiff, in violation of § 794.026, Fla. Stat. to co-Defendant JOSHUA WOOLSEY.

205.   Such communication constitutes a direct violation of the statute and poses significant harm to the privacy and well-being of Plaintiff.

206.   As a direct and proximate result of the above unlawful acts and omissions, Plaintiff was injured and sustained economic damages, including lost income, lost prestige, lost potential employment and good standing in the community; she has lost the capacity for the enjoyment of life; sustained severe

emotional pain, anguish, humiliation, insult, indignity, loss of self-esteem, inconvenience and hurt, because of these individually named Defendants' actions, and she is therefore entitled to compensatory damages pursuant to the above provisions. Said losses, injuries, and expenses are either permanent or continuing in nature and Plaintiff will continue to suffer same in the future.

### COUNT XIV
### VIOLATION OF § 119.071(2)(h)1.b., FLA. STAT. (PUBLIC RECORDS EXEMPTION FOR VICTIMS OF SEXUAL BATTERY)
### (Against ST. JOHNS COUNTY SHERIFF'S OFFICE)

207.   Paragraphs 1 through 113 are re-alleged and incorporated herein by reference. Specific Paragraphs: 1, 2, 3, 4, 5, 39, 40, 41, 42, 46, 47, 48, 49, 50, 51, 66, 68, 69, 70, 71, 72, 78, 79, 81, and 82.

208.   Plaintiff brings this action against Defendants ST. JOHNS COUNTY SHERIFF'S OFFICE for violating section 119.071(2)(h)1.b., Fla. Stat., pertaining to the Public Records Exemption for Victims of Sexual Battery.

209.   At some point between April 2018 and June 2022, Defendants ST. JOHNS COUNTY SHERIFF'S OFFICE disclosed personal identifying information of victims of sexual battery, which is protected under § 119.071(2)(h)1.b., FLA. STAT., without authorization. Such information identified information relating to Plaintiff.

210.   Such disclosure constitutes a direct violation of the statute and infringes upon the privacy and safety of Plaintiff.

211. §119.071(2)(b) Fla. Stat. deems any information that may reveal the identity of a person who is a victim of any sexual offense confidential and exempts such disclosure from public records, even if the alleged victim chooses not to file a complaint but has requested that records of the complaint remain confidential.

212. As a direct and proximate result of the above unlawful acts and omissions, Plaintiff was injured and sustained economic damages, including lost income, lost prestige, lost potential employment and good standing in the community; she has lost the capacity for the enjoyment of life; sustained severe emotional pain, anguish, humiliation, insult, indignity, loss of self-esteem, inconvenience and hurt, because of these individually named Defendants' actions, and she is therefore entitled to compensatory damages pursuant to the above provisions. Said losses, injuries, and expenses are either permanent or continuing in nature and Plaintiff will continue to suffer same in the future.

## COUNT XV
## DEPRIVATION OF CIVIL RIGHTS, 42 U.S.C. § 1983--FAILURE TO INTERVENE
### (Against ST. JOHNS COUNTY SHERIFF'S OFFICE)

213. Paragraphs 1 through 113 are re-alleged and incorporated herein by reference. Specific Paragraphs: 1, 2, 3, 4, 5, 39, 40, 41, 42, 46, 47, 48, 49, 50, 51, 66, 68, 69, 70, 71, 72, 78, 79, 81, 82, and 104-111.

214. Plaintiff brings this action against Defendant ST. JOHNS COUNTY SHERIFF'S OFFICE.

215.   Defendant ST. JOHNS COUNTY SHERIFF'S OFFICE failed to intervene in actions or conduct that violate the constitutional rights of individuals-- i.e. here, Plaintiff--as protected by the United States Constitution.

216.   Despite witnessing or having knowledge of unconstitutional conduct, Defendant ST. JOHNS COUNTY SHERIFF'S OFFICE, through its agents or employees, failed to take appropriate action to intervene and prevent the deprivation of constitutional rights.

217.   The failure of the Defendant to intervene in unconstitutional conduct has resulted in Plaintiff's traumatic experience being publicly shared and disseminated. This failure has directly contributed to the deprivation of constitutional rights and has caused significant harm, distress, and prejudice to Plaintiff.

218.   Furthermore, the failure to intervene in this situation raised serious concerns regarding the protections provided by section 786.28, Florida Statutes, and 42 U.S.C. section 1983. Such behavior not only undermines the trust and integrity of Defendant ST. JOHNS COUNTY SHERIFF'S OFFICE but also poses risks to public safety and welfare.

219.   As a direct and proximate result of the above unlawful acts and omissions, Plaintiff was injured and sustained economic damages, including lost income, lost prestige, lost potential employment and good standing in the

community; she has lost the capacity for the enjoyment of life; sustained severe emotional pain, anguish, humiliation, insult, indignity, loss of self-esteem, inconvenience and hurt, because of these individually named Defendants' actions, and she is therefore entitled to compensatory damages pursuant to the above provisions. Said losses, injuries, and expenses are either permanent or continuing in nature and Plaintiff will continue to suffer same in the future.

**COUNT XVI**
**VIOLATION OF 14TH AMENDMENT DUE PROCESS RIGHTS**
**PURSUANT TO**
**42. U.S.C. § 1983 FOR SHOCKING AND OUTRAGEOUS CONDUCT**
**(Against ST. JOHNS COUNTY SHERIFF'S OFFICE)**

220.   Paragraphs 1 through 113 are re-alleged and incorporated herein by reference. Specific Paragraphs: 1, 2, 3, 4, 5, 39, 40, 41, 42, 46, 47, 48, 49, 50, 51, 66, 68, 69, 70, 71, 72, 78, 79, 81, 82, and 104-111.

221.   Plaintiff brings this count against Defendant ST. JOHNS COUNTY SHERIFF'S OFFICE regarding for its violation of 14th Amendment due process rights under 42 U.S.C. § 1983.

222.   Defendant ST. JOHNS COUNTY SHERIFF'S OFFICE engaged in shocking and outrageous conduct that has deprived Plaintiff of her fundamental rights to due process under the 14th Amendment to the United States Constitution.

223.   The conduct exhibited by the Defendant ST. JOHNS COUNTY SHERIFF'S OFFICE, whether through its agents, employees, or policies, has been

shocking and outrageous in nature, and has resulted in severe deprivation of due process rights for the affected individuals.

224.   The shocking and outrageous conduct of Defendant ST. JOHNS COUNTY SHERIFF'S OFFICE includes specifically but not limited to, the transfer of sensitive information pertaining to the crime of sexual battery, of which Plaintiff is a victim. This sensitive information was provided to co-Defendant JOSHUA WOOLSEY. This deprivation of due process rights has caused significant harm, distress, and prejudice to Plaintiff in what would have been her then current and future endeavors.

225.   As a direct and proximate result of the above unlawful acts and omissions, Plaintiff was injured and sustained economic damages, including lost income, lost prestige, lost potential employment and good standing in the community; she has lost the capacity for the enjoyment of life; sustained severe emotional pain, anguish, humiliation, insult, indignity, loss of self-esteem, inconvenience and hurt, because of these individually named Defendants' actions, and she is therefore entitled to compensatory damages pursuant to the above provisions. Said losses, injuries, and expenses are either permanent or continuing in nature and Plaintiff will continue to suffer same in the future.

## COUNT XVII
## INVASION OF PRIVACY--PUBLIC DISCLOSURE OF PRIVATE FACTS
### (Against MATTHEW CLINE, individually)

226.   Paragraphs 1 through 113 are hereby re-alleged and incorporated herein by reference. Specific Paragraphs: 1, 2, 3, 5, 38, 39, 40, 41, 42, 46, 47, 68, 69, 70, 72, 78, 79, 81, and 82.

227.   The distribution of the sexual battery investigative report identified *supra*, by MATTHEW CLINE, individually and outside of the scope of his employment, in both redacted and unredacted form, was an invasion of Plaintiff's solitude and privacy.

228.   The invasion of privacy described above, directly and proximately caused Plaintiff's injuries in that it directly, and in a natural and continuous sequence, produced or contributed to such injuries.

229.   As a direct and proximate result of the above unlawful acts and omissions, Plaintiff was injured and sustained economic damages, including lost income, lost prestige, lost potential employment and good standing in the community; she has lost the capacity for the enjoyment of life; sustained severe emotional pain, anguish, humiliation, insult, indignity, loss of self-esteem, inconvenience and hurt, because of these individually named Defendants' actions, and she is therefore entitled to compensatory damages pursuant to the above provisions. Said losses, injuries, and expenses are either permanent or continuing in nature and Plaintiff will continue to suffer same in the future.

## COUNT XVIII

## VIOLATION OF ART. I, § 16(b)(1), (2) & (5), FLA. CONST. ("MARSY'S LAW")
### (Against MATTHEW CLINE, individually)

230.   Paragraphs 1 through 113 are hereby re-alleged and incorporated herein by reference. Specific Paragraphs: 1, 2, 3, 5, 38, 39, 40, 41, 42, 46, 47, 68, 69, 70, 72, 78, 79, 81, 82, 99, 100, and 101.

231.   Defendant MATTHEW CLINE, individually and acting outside of the course and scope of his employment, violated Article I, Section 16(b)(1), (2) & (5) of the Florida Constitution, also known as "Marsy's Law."

232.   Article I, Section 16(b)(1), (2) & (5) of the Florida Constitution, also known as "Marsy's Law," provides Plaintiff the right to due process and to be treated with fairness and respect for her dignity; the right to be free from intimidation, harassment, and abuse; and the right to prevent the disclosure of information or records that could be used to locate or harass Plaintiff or Plaintiff's family, or which could disclose confidential or privileged information.

233.   At some point between April 2018 and June 2022, Defendant MATTHEW CLINE, individually and acting outside of the course and scope of his employment, intentionally and/or recklessly communicated the identity of a sexual crime victim and the factual information underlying the reporting of a sexual battery, i.e., Plaintiff and her personal, private information, to co-Defendant JOSHUA WOOLSEY.

234.   Defendants' actions constitute a violation of Article I, Section 16(b)(1), (2) & (5) of the Florida Constitution.

235.   The Defendant's actions as described above constitute a violation of the rights afforded to the Plaintiff under Marsy's Law.

236.   Plaintiff is entitled to injunctive relief restraining Defendant MATTHEW CLINE from further violating Plaintiff's rights under Marsy's Law.

237.   As a direct and proximate result of the above unlawful acts and omissions, Plaintiff was injured and sustained economic damages, including lost income, lost prestige, lost potential employment and good standing in the community; she has lost the capacity for the enjoyment of life; sustained severe emotional pain, anguish, humiliation, insult, indignity, loss of self-esteem, inconvenience and hurt, because of these individually named Defendants' actions, and she is therefore entitled to compensatory damages pursuant to the above provisions. Said losses, injuries, and expenses are either permanent or continuing in nature and Plaintiff will continue to suffer same in the future.

## COUNT XIX
## VIOLATION OF § 794.026, FLA. STAT. (CIVIL RIGHT OF ACTION FOR COMMUNICATING THE IDENTITY OF A SEXUAL CRIME VICTIM)
### (Against MATTHEW CLINE, individually)

238.   Paragraphs 1 through 113 are re-alleged and incorporated herein by reference. Specific Paragraphs: 1, 2, 3, 5, 38, 39, 40, 41, 42, 46, 47, 68, 69, 70, 72, 78, 79, 81, and 82.

239.   This count sets forth a claim against Defendant MATTHEW CLINE, individually and outside the course and scope of his employment, for his violation of § 794.026, Fla. Stat., which establishes a civil right of action for communicating the identity of a sexual crime victim.

240.   On or around April 20, 2018, Plaintiff reported to Defendant ST. JOHNS COUNTY SHERIFF'S OFFICE that she had been the victim of a sexual battery.

241.   At some point between April 2018 and June 2022, Defendant MATTHEW CLINE, individually and acting outside of the course and scope of his employment, intentionally and/or recklessly communicated the identity of a sexual crime victim and the factual information underlying the reporting of a sexual battery, i.e., Plaintiff, in violation of § 794.026, Fla. Stat. to co-Defendant JOSHUA WOOLSEY.

242.   Such communication constitutes a direct violation of the statute and poses significant harm to the privacy and well-being of Plaintiff.

243.   As a direct and proximate result of the above unlawful acts and omissions, Plaintiff was injured and sustained economic damages, including lost income, lost prestige, lost potential employment and good standing in the community; she has lost the capacity for the enjoyment of life; sustained severe emotional pain, anguish, humiliation, insult, indignity, loss of self-esteem,

inconvenience and hurt, because of these individually named Defendants' actions, and she is therefore entitled to compensatory damages pursuant to the above provisions. Said losses, injuries, and expenses are either permanent or continuing in nature and Plaintiff will continue to suffer same in the future.

**COUNT XX**
**VIOLATION OF § 119.071(2)(h)1.b., FLA. STAT. (PUBLIC RECORDS**
**EXEMPTION FOR VICTIMS OF SEXUAL BATTERY)**
**(Against MATTHEW CLINE, individually)**

244.   Paragraphs 1 through 113 are re-alleged and incorporated herein by reference. Specific Paragraphs: 1, 2, 3, 5, 38, 39, 40, 41, 42, 46, 47, 68, 69, 70, 72, 78, 79, 81, and 82.

245.   Plaintiff brings this action against Defendant MATTHEW CLINE, individually and acting outside of the course and scope of his employment, for violating section 119.071(2)(h)1.b., Fla. Stat., pertaining to the Public Records Exemption for Victims of Sexual Battery.

246.   At some point between April 2018 and June 2022, Defendant MATTHEW CLINE, individually and acting outside of the course and scope of his employment, disclosed personal identifying information of a victim of sexual battery, which is protected under § 119.071(2)(h)1.b., Fla. Stat., without authorization. Such information identified information relating to Plaintiff.

247.   Such disclosure constitutes a direct violation of the statute and infringes upon the privacy and safety of Plaintiff.

248.   §119.071(2)(b) Fla. Stat. deems any information that may reveal the identity of a person who is a victim of any sexual offense confidential and exempts such disclosure from public records, even if the alleged victim chooses not to file a complaint but has requested that records of the complaint remain confidential.

249.   As a direct and proximate result of the above unlawful acts and omissions, Plaintiff was injured and sustained economic damages, including lost income, lost prestige, lost potential employment and good standing in the community; she has lost the capacity for the enjoyment of life; sustained severe emotional pain, anguish, humiliation, insult, indignity, loss of self-esteem, inconvenience and hurt, because of these individually named Defendants' actions, and she is therefore entitled to compensatory damages pursuant to the above provisions. Said losses, injuries, and expenses are either permanent or continuing in nature and Plaintiff will continue to suffer same in the future.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

(a)   that process issue and this Court take jurisdiction over this case;

(b)   that this Court grant equitable relief against Defendants under the applicable counts set forth above, mandating Defendants' obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c)   enter judgment against Defendants and for Plaintiff awarding damages

to Plaintiff from Defendants for Defendants' violations of law enumerated herein;

(d)    enter judgment against Defendants and for Plaintiff permanently enjoining Defendants from future violations of the state and federal laws enumerated herein;

(e)    enter judgment against Defendants and for Plaintiff awarding Plaintiff's attorney's fees and costs; and

(f)    grant such other further relief as being just and proper under the circumstances.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues set forth herein which are so triable.

Dated this 14th day of May, 2024.

/s/ *Marie A. Mattox*
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P. A.
203 N. Gadsden St.
Tallahassee, FL 32301
Telephone:  (850) 383-4800
Facsimile:   (850) 383-4801
Email: marie@mattoxlaw.com
Secondary emails:
michelle2@mattoxlaw.com
marlene@mattoxlaw.com
discovery@mattoxlaw.com

59

/s/ *Cynthia A. Myers*
Cynthia A. Myers, Esq.
Florida Bar No. 147397
Cynthia A. Myers, P.A.
P.O. Box 15011
Tallahassee, Florida 32308
Telephone: (850) 322-1124
cindy@cindymyerslaw.com
shannon@mattoxlaw.com

*Attorneys for Plaintiff*