UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ALYSSA CAMPER SHORSTEIN,

    Plaintiff,

v.                                        CASE NO. 3:24-cv-00489- BJD-MCR

ROBERT A. HARDWICK, et al.,

    Defendants.
_____/

**DEFENDANTS' REPLY TO SHORSTEIN'S RESPONSE
IN OPPOSITION TO SUMMARY JUDGMENT**

Per Local Rule 3.01(e), Defendants HARDWICK and CLINE reply to Shorstein's response opposing summary judgment [Doc.167] as follows:

Despite months of thorough discovery, including dozens of depositions spanning the local legal and political community, judges, and elected officials, Shorstein's spectacular allegations of a conspiracy to sink her campaign ultimately bore no fruit. There was no conspiracy, no defamatory statements, no unlawful conduct by the Sheriff or Cline. Shorstein's response creates no dispute of fact or issue of law precluding summary judgment.

1. <u>Shorstein misstates undisputed record evidence</u>.

Shorstein falsely claims that Cline told former Sheriff Shoar that she made a false report. [Doc.167, p.8 citing to Ex.17]. Despite any such impression, Shoar was precise: "Matt Cline was not pushing that – that this was a false report." [Doc.161-11, 65:21-66:17]. "[T]hat was *my opinion*." [Doc.161-11, 66:11].

Shorstein falsely claims that "[Cline] clearly knew the damage the report and any accusations of falsity would inflict upon Shorstein, and that there was a possibility the Woolseys would attempt to use it as part of the campaign." [Doc.167, p.10]. To the contrary, Cline opined that the *Woolseys,* not Shorstein, would suffer political blowback. Cline told Josh Woolsey that "this would be very bad for Casey [Woolsey's] campaign if the report was used in any manner." [Doc.161-5, 499:13-15]. The Sheriff and Cline had nothing to do with any campaign flyer. Full stop.[1]

2.  <u>Cline acted within his employment and is individually immune.</u>

Regarding Shorstein's contention that "Cline acted outside the course and scope of his duties" [Doc.167, p.13, Sec.B], Florida courts are governed by a tri-partite inquiry when analyzing whether an act occurred "within the scope of employment":

> (1) [Whether] the conduct is of the kind the employee is hired to perform; (2) [whether] the conduct occurs substantially within the time and space limits authorized or required by the work to be performed; and (3) [whether] the conduct is activated at least in part by a purpose to serve the [employer].

*Fernandez v. Fla. Nat'l Coll., Inc.*, 925 So. 2d 1096, 1100 (Fla. 3d DCA 2006) (internal quotation omitted). As General Counsel, Cline had a broad range

---

[1] The Woolseys – whether heeding Cline's caution or deciding on their own – did not disclose, distribute, or use the report as part of their campaign. [Doc.160, fn.5]. Either way, the flyer is not defamatory and says nothing about a false assault report. Moreover, Shorstein makes up facts about the flyer's creation and distribution ("the campaign manager for Woolsey's wife's campaign for county judge coordinated with William Stafford Jones. . . sending flyers to all St. Johns County voters. . .) [Doc.167, p.9]. There are no citations to record evidence following these assertions because these facts do not exist.

2

of duties that encompassed legal advice regarding public records and pending litigation. [161-3, 117:20-118:5]. His acts were the kind he was hired to do, occurred at the Sheriff's office, and were activated by a records request, pending litigation, and instruction from the Sheriff, i.e., by a purpose to serve the Sheriff. Cline is immune under Fla. Stat. §768.28 for all claims .

3. No evidence of a defamatory statement

After thorough discovery, Shorstein was unable to produce a single defamatory statement from Cline's mouth. Rather, to Commissioner Blocker, "Mr. Cline gave some legal background [ ], and [his] comments were more focused on the law in general." [Doc.161-15, 16:15-17:4]. "Cline believed that Shorstein's report was not credible." [Doc.161-15, 21:6-23]. "Words are defamatory when they charge a person with an infamous crime or tend to subject one to hatred, distrust, ridicule, contempt, or disgrace, or tend to injure one in one's business or profession." *Rubin v. U.S. News & World Rep., Inc.,* 271 F.3d 1305, 1306 (11th Cir. 2001). These statements are not defamatory.[2]

4. No actionable statement

Furthermore, "[t]rue statements [ ] and statements of pure opinion are protected from defamation actions by the First Amendment." *Turner v. Wells*, 879 F.3d 1254, 1272 (11th Cir. 2018). Any legal advice rendered or expression of his impression after reviewing the evidence obtained during the investigation, made

---

[2] The only statement Plaintiff identifies as defamatory is "Cline made it clear that he did not believe that Shorstein had truly been sexually battered." [Doc.167, p.11].

3

by Cline to a County Commissioner regarding the pending injunction litigation, is pure opinion. [Doc.161-3, 136:21-138:4]. "[P]ure opinion [occurs] when the defendant makes a comment or opinion based on facts which are set forth in the publication." *Turner,* 879 F.3d at 1262. Whether a statement is fact or opinion is a question of law for the court. *Id.* at 1262-63.

While the Shorstein-Woolsey judicial campaign was ongoing, Shorstein filed a lawsuit to enjoin the Sheriff from releasing a public record. [166-12, pp. 10-42]. As General Counsel, Cline was obliged to have "an interest in defending" against the injunction proceeding. [161-3, 117:20-118:5]

    5.  <u>Public Figure / no evidence of actual malice</u>.

This Court has already determined that Shorstein was a "public figure." [Doc.138, p.9 (Shorstein "voluntarily entered the public arena.")]. Thus, she must prove actual malice on the part of the publisher. *Turner,* 879 F.3d at 1273 (internal citations omitted). Shorstein criticizes Cline's providing "Blocker with the unredacted report and his belief that Shorstein was lying," and "when he provided the unredacted report to Woolsey." [Doc.167, pp.13-14]. As evidence that this conduct was malicious, Shorstein points to Cline's admission that there was a "politically charged campaign" against Shorstein. [Doc.167, p.14]. Shorstein ignores that, regardless of any ongoing campaign, it was Cline's job to produce public records and to defend and advise regarding litigation against the Sheriff. As Blocker testified: Cline's "boss told him to come down and discuss [the report] with me." [Doc.161-15, 19:14-21].

4

6. <u>Shorstein misunderstands the "Impact Rule."</u>

Shorstein argues that Cline "providing the unredacted report to the Woolseys and Blocker further traumatized her..." and caused "physical damages," but has not and cannot show any physical injury. [Doc.167, p.18]. Though Florida courts "recognize a claim where an actual physical injury could be demonstrated to be caused by psychic trauma," *Zell v. Meek*, 665 So. 2d 1048, 1053 (Fla. 1995), <u>there is no evidence of physical injury</u> caused by the Sheriff or Cline. [Doc.161-1, 161:11–162:7; Doc.161-1-1, pp. 316-17, Int. 10]. Claiming that showing the unredacted report "negatively impacted [her] campaign and caused her further emotional trauma" [Doc.167, p.28] is not physical injury.

7. <u>The intracorporate conspiracy doctrine precludes a conspiracy</u>.

Shorstein's conspiracy claim started as an allegation of wrongdoing by the Sheriff, Cline, the Woolseys, and other now-dismissed defendants. [Doc.50, pp.35-38, Count IX]. The only "evidence" Shorstein could offer in support of that claim was that she believed Cline and Josh Woolsey – "were much better friends than we knew." [Doc.161-1, 148:7-150:1].

After realizing *no evidence* supported the claim, Shorstein has retreated to a ridiculous allegation that the Sheriff and Cline, employees of the same agency, were the conspirators and "worked together to defame Shorstein" by showing Commissioner Blocker an unredacted report. [Doc.167, p.20]. "Under the [intracorporate conspiracy] doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment,

5

cannot conspire among themselves." *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000); *Denney v. City of Albany*, 247 F.3d 1172, 1190-91 (11th Cir. 2001) (The doctrine applies to public entities).

    8.  <u>Shorstein abandoned her negligent supervision/retention claims</u>

Shorstein neither addresses nor provides summary judgment evidence to rebut Defendants' motion on her claims of negligent supervision and retention against the Sheriff and, accordingly, has abandoned the same. *See Jones v. Bank of Am., N.A.*, 564 F. App'x 432, *6 (11th Cir. 2014).

    9.  <u>Shorstein misinterprets Marsy's Law</u>.

Shorstein cites to *L.T. v. State*, 296 So. 3d 490 (2020), in a half-hearted attempt to prove she has a remedy. [Doc.167, p.28]. Of the exhaustive list of Marsy's Law rights discussed in *L.T.,* none is the right to file a civil action for damages. *Id. at* 494-95.

    10.  <u>Shorstein misinterprets the required waiver of sovereign immunity</u>.

Shorstein contends the Sheriff is not sovereignly immune from §764.026 "because [ ] waiver of immunity does not require magic words," [Doc.167, p.29], citing *Zisis v. Signal Safe, Inc.*, 382 So.3d 772, 776 (Fla. 3d DCA 2024). *Zisis* states: "[T]he immunity of the State of Florida and its agencies from liability for claims arising under Florida law or common law is <u>absolute absent a clear, specific, and unequivocal waiver</u>..." *Id. a*t 776 (emphasis added; cleaned up). Either Shorstein did not read *Zisis*, or hopes the Court will not.

6

11. <u>Shorstein cannot change her claims at this stage</u>

Though Counts XIV and XX plead a cause of action under Fla. Stat., §119.071.(2)(h)1.b [Doc.50], Shorstein, perhaps realizing no such claim exists, attempts to recast them as negligence per se claims. [Doc.167, p.30]. First, Shorstein did not bring a negligence per se claim based on 119. A plaintiff cannot amend her complaint through argument made in her brief in opposition to the defendant's motion for summary judgment. "At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a)." *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006). Further, "the fact of negligence per se resulting from a violation of this type of statute does not necessarily mean there is *actionable* negligence." *deJesus v. Seaboard C. L. R. Co.*, 281 So. 2d 198, 201 (Fla. 1973).

Respectfully submitted this 10th day of November 2025.

**COPPINS MONROE, P.A.**

*/s/ William B. Armistead*
Gwendolyn P. Adkins, FBN: 949566
William B. Armistead, FBN: 88535
2316 Killearn Center Blvd., Suite 202
Tallahassee, Florida 32309
Telephone: (850) 422-2420
gadkins@coppinsmonroe.com
warmistead@coppinsmonroe.com
Secondary: kbruner@coppinsmonroe.com
bmiller@coppinsmonroe.com

ATTORNEYS FOR DEFENDANTS

7

## **CERTIFICATE OF SERVICE**

Pursuant to Rule 5(b)(2)(E), *Federal Rules of Civil Procedure*, this document is being filed electronically with the court's electronic-filing system and service shall be through the Court's transmission facilities for all registered users.

*/s/ William B. Armistead*