UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ALYSSA CAMPER SHORSTEIN,

      Plaintiff,

                                    Case No. 3:24-cv-489-BJD-MCR

v.

ROBERT A. HARDWICK, in his
official capacity as Sheriff of St.
Johns County Florida, and
MATTHEW CLINE, in his
individual capacity,

      Defendants.

                                /

**O R D E R**

**THIS CAUSE** is before the Court on Defendants' Motion for Summary

Judgement (Doc. 160); Plaintiff's Response in Opposition (Doc. 167); and

Defendants' Reply (Doc 169).

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he court

shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). The record to be considered on a motion

for summary judgment may include "depositions, documents, electronically

stored information, affidavits or declarations, stipulations (including those made

for purposes of the motion only), admissions, interrogatory answers, or

other materials." Fed. R. Civ. P. 56(c)(1)(A). An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the non-movant.  See Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the Court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (internal citations and quotation marks omitted). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. In determining whether summary judgment is appropriate, a court

"must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).

I.     BACKGROUND

Plaintiff brings twenty counts over the course of her fifty-six page Amended Complaint. (Doc. 50; AC). The facts giving rise to this case follow Plaintiff's claim of being sexually battered on April 20, 2018. (Doc. 161.1 at 369); (Doc. 161.1 at 314). Plaintiff was participating in her bachelorette party with dinner and drinks at several local bars. Id. As her friends trickled away, Plaintiff remained and continued drinking alcohol. Id. She could not recall the circumstances completely, but she remembered calling for an Uber and then being sexually assaulted in the passenger seat of a vehicle. Id.

Plaintiff submitted to a sexual assault examination at the Family Life Center. (Doc. 161.1 at 314). Plaintiff also filed a police report and contacted Defendant Undersheriff Matthew Cline ("Cline") to arrange for an interview between Plaintiff and law enforcement officers from the St. John's Sheriff's Office ("SJSO"). Id.; (Doc. 161.3 at 99).

Law enforcement officers began investigating Plaintiff's claims immediately and were able to discover the alleged assailant's name. (Doc. 161.1 at 371). Officers also interviewed the bartender serving Plaintiff

immediately before the incident. Id. The bartender stated that the pair were very close at the bar and may have been kissing before leaving together. Id. Video and photographic evidence showed the two dancing and touching while at the bar. (Docs. 166.4 and 166.6).

The alleged assailant denied assaulting Plaintiff. Id. at 373. He claimed that before leaving together the two kissed in his truck. Id. As he was driving Plaintiff home, he claims she began touching his crotch before Plaintiff asked him to pull over where the pair engaged in what he described as consensual sexual intercourse. Id. He admitted to ripping Plaintiff's panties when he pulled them to the side, and Plaintiff was photographed with injuries to her left wrist after the incident. Id. Plaintiff left the vehicle and waived down another driver and awoke in that person's car. (Doc. 166.2). Ultimately, Plaintiff declared that she did not want the investigation to go further once the alleged assailant was identified, and law enforcement ceased further efforts. Id. Defendant Cline found the alleged assailant's version of events to be more corroborated by the evidence. (Doc. 161.3 at 138).

Plaintiff expressed grave concern that her reporting of the alleged assault would circulate, and people would learn of the incident. Id. at 97. Defendant Cline assured her that he would "lock it down." Id. Defendant Cline had the impression that Plaintiff was trying to communicate to him that the situation should not have happened but that it was not a sexual

- 4 -

assault, and moreover, Plaintiff wanted no one finding out. Id. The report

was classified as "unfounded" and closed. (Doc. 161.10 at 81).

Despite the case's closure, Defendant Cline contacted the Honorable

Carlos Mendoza, United States District Court Judge, with whom he had

previously worked when the pair were prosecutors. (Doc. 161.12 at 9).

Defendant Cline described the situation to Judge Mendoza hoping to gain his

honor's opinion on whether he had done the right thing by closing the case—

or alternatively, that he should close the case despite Plaintiff's objection to

continued investigation. Id. at 11. Judge Mendoza then relayed the

conversation he had with Defendant Cline to attorney Terry Shoemaker, who

was left with the impression that Judge Mendoza was told by Defendant

Cline that he did not believe Plaintiff's account of April 20, 2018. Id. at

161.13 at 15.

Defendant Cline also showed former Defendant Joshua Woolsey an

unredacted copy of the report on June 9, 2022, after Joshua Woolsey made a

public records request for all records pertaining to Plaintiff. (Doc. 43.2 at 3).

Defendant Cline alerted Plaintiff before providing the report, and after

litigation in state court over the report's release, the state court ordered the

release of the report publicly with the names and identifying information of

the individuals in the report redacted. Id. at 3-4; (Doc. 161.22). At the time

the request was made, Joshua Woolsey's wife, Casey Woolsey was running

against Plaintiff for county judge. (Doc. 161.3 at 44). The evidence establishes that Joshua Woolsey had independent knowledge about the night of Plaintiff's bachelorette party, which surprised Defendant Cline. <u>Id.</u> at 43.

Defendant also disclosed the unredacted report to a county commissioner during a budget meeting with the Sherriff. <u>Id.</u> at 24. Defendant Cline's disclosure came amongst the ongoing state court litigation pertaining whether the report was subject to disclosure. <u>Id.</u> Defendant Cline denied providing an unredacted report to the commissioner, but this testimony is contradicted by the deposition of the commissioner that said it was unredacted. (Doc. 161.15 at 21-22).

Plaintiff now brings this suit alleging twenty counts against Defendants. All Defendants except Defendant Cline and the SJSO have been removed or dismissed from this case.

## II.    DISCUSSION

1.    Intentional Infliction of Emotional Distress

Under Florida law a plaintiff must provide evidence of "(1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct; (3) that the conduct caused emotional distress; and (4) that the distress was severe" to state a claim for IIED.  <u>Parkey v. Carter</u>, 702 F. Supp. 3d 1253, 1258 (S.D. Fla. 2023) (citing <u>Nettles v. City of Leesburg Police Dep't</u>, 415 F. App'x. 116 (11th Cir. 2010)). Outrageous conduct is "behavior that goes beyond all

possible bounds of decency and is regarded as atrocious and utterly intolerable in a civilized community[.]" Rubio v. Lopez, 445 F. App'x 170, 175 (11th Cir. 2011).

As to Plaintiff's claim to IIED, there is no evidence that Defendants' conduct was outrageous. Defending one's position in a legal proceeding, such as in a state court proceeding, is almost never a basis for a finding of outrageous conduct—especially since the state court ultimately ordered the redacted release of the report. See Southland Corp. v. Bartsch, 522 So. 2d 1053, 1056 (Fla. 5th DCA 1988) (holding that "conduct is privileged and the actor is never liable where he does no more than insist upon his legal rights in a permissible way, even though the actor is well aware that such insistence is sure to cause emotional distress").

Moreover, Defendants disbelief of Plaintiff and disclosing their take on what occurred on April 20, 2018, do not defy the bounds of human decency. While imperfect, Defendants' disclosures to Judge Mendoza or even the county commissioner and Joshua Woolsey were not outrageous. No jury could find Defendant Cline's effort to get advice from a former colleague and well-regarded member of the legal community as atrocious. Nor can a jury find the disclosure to the county commissioner intolerable since it was directly pertinent to ongoing litigation and the commissioner had already known of the events—and could have learned about them ultimately owing to the

court's ruling. The same can be said about the disclosure of Plaintiff's name

and information to Joshua Woolsey. The court ordered disclosure and the

unredacted premature disclosure would have occurred but for Defendant

Cline attempting to alert Plaintiff to Joshua Woolsey's request.

2.    Negligent Infliction of Emotional Distress, Negligence Claims,

and Statutory Claims

In Florida, a claim for NIED requires a plaintiff to state

> (1) . . . a physical injury; (2) the plaintiff's physical
> injury must be caused by the psychological trauma;
> (3) the plaintiff must be involved in some way in the
> event causing the negligent injury to another; and (4)
> the plaintiff must have a close personal relationship
> to the directly injured person.

Corbin v. Prummell, 655 F. Supp. 3d 1143, 1166–67 (M.D. Fla. 2023) (quoting

Zell v. Meek, 665 So. 2d 1048, 1054 (Fla. 1995) (internal quotation marks

omitted). Similarly, claims for other forms of negligence require either a

physical impact or a physical manifestation from an inflicted emotional

trauma. See Pipino v. Delta Air Lines, Inc., 196 F. Supp. 3d 1306, 1315 (S.D.

Fla. 2016) ("Florida's version of the impact rule bars a claim for mental or

emotional damages caused by a defendant's negligence unless (1) the plaintiff

sustained a physical impact from an external source, (2) the claim arises from

a situation in which the impact requirement is relaxed and the plaintiff

manifests a significant discernible physical injury or illness as a result of the

emotional trauma, or (3) one of the narrow exceptions to the impact rule applies rendering the rule inapplicable.") (internal quotations omitted).

"[T]he impact rule requires that before a plaintiff can recover damages for emotional distress caused by the negligence of another, the emotional distress suffered must flow from physical injuries the plaintiff sustained in an impact." R.J. v. Humana of Fla., Inc., 652 So. 2d 360, 362 (Fla. 1995) (internal quotations omitted). Florida has deliberately maintained a limited class of exceptions to the impact rule, such as witnessing the death of a loved one. Zell, 665 So. 2d at 1054. Indeed, Florida's "strict adherence" to the impact rule has prevented even cases where injuries resulted from a false-positive HIV diagnosis at a time when it was thought to be a near-certain death sentence. See R.J., 652 So. 2d 360 at 363-64 (explaining the necessity of limiting speculative damages and the availability of damages absent a physical injury pursuant to a claim of IIED).

Similar to the plaintiff in R.J., Plaintiff's version of events, if true, evokes the sympathy of any reasonable person. However, Plaintiff provides no applicable exception to the impact rule in this case and the Court finds none. Plaintiff was not physically impacted by Defendants' actions, and she did not witness the physical injury of another. Even if the Court could consider the injuries of which Plaintiff complains—vomiting, trembling, and hyperactive nervous reactions—they are inadequate as a matter of law.

See,e.g., Whiddon v. Serv. Corp. Int'l, 626 F. Supp. 3d 1243, 1246 (N.D. Fla. 2022) (collecting cases finding the impact rule was not met by plaintiffs suffering anxiety, headaches, insomnia, hair loss, bowel trouble, and vomiting). Because Plaintiff cannot meet the impact rule she cannot establish a claim for negligence.

In fact, Plaintiff provides no evidence of damages. She invites the Court to speculate that the Defendants' disclosure of the report cost her reputational damages and a chance at winning a judgeship. In addition to the lack of evidence on this point, Defendants did not cause the substantive information regarding Plaintiff's alleged sexual assault to be disseminated. At worst, Defendants' disclosure resulted only in Plaintiff's name and identifying information being disclosed, which was going to occur by implication of the judicial order requiring its redacted release. If the report was produced pursuant to a public records request of an individual, it becomes a certainty as to who the redacted accuser is—at least in this case. Though Plaintiff's address was provided to the commissioner and Defendant Woolsey there is no injury flowing from this disclosure, defeating any potential cause of action Plaintiff would have under Florida laws cited.

The Court need not weigh into any discourse over whether Florida intended to create a civil cause of action for disclosure of reports submitted by sexual assault victims. In addition to the lack of damages in this case, SJCO

would be immune under principals of sovereign immunity. Section 794.026 of the Florida Statutes does not waive sovereign immunity nor is there is evidence of reckless disregard. Section 119.071(2)(h)(1.b) deals with exemptions to the production of private information, not with the creation of private causes of action. See Bratcher v. Waters, No. 3:24-CV-1174-BJD-PDB, 2025 WL 722739, at *1 (M.D. Fla. Mar. 6, 2025). Even if Section 119.071 created a private cause of action, SJCO would be immune from suit.

Finally, Marsy's Law specifically states that providing an identity of a sexual assault victim is insufficient to violate Florida's Constitution. Instead, a violation requires "disclosure of information or records that could be used to locate or harass" the victim. City of Tallahassee v. Fla. Police Benevolent Ass'n, Inc., 375 So. 3d 178, 184 (Fla. 2023). Marsy's Law "created a Bill of Rights for crime victims and their families." Dean v. State, 337 So. 3d 349, 351 (Fla. 4th DCA 2022) (quotations and alterations in original omitted). Its purpose is vindicated in actions, like the state court proceeding deciding whether the Report would be made public. Plaintiff has not shown that Florida intended to create a private cause of action. See, e.g., L. T. v. State, 296 So. 3d 490, 499 (Fla. 1st DCA 2020) ("Marsy's Law does not provide procedures to implement and enforce the victim's rights set forth in the law or remedies for failure to recognize those rights.").

Even if the Florida Constitution could be construed to prevent the potential disclosure of a victim's location or identifying information, as opposed to the actual disclosure, there is no evidence the disclosure aided the commissioner or Joshua Woolsey (or people in contact with them) in locating Plaintiff. There is no evidence any disclosure could have led Judge Mendoza to learning of Plaintiff's location. There is no explicit waiver of sovereign immunity. Finally, Plaintiff was a public official with readily ascertainable whereabouts. There is no evidence of any injury inuring to Plaintiff from the possible disclosures, even if the substantive protections where otherwise met and a cause of action existed.

3.    Defamation

"Defamation under Florida law has these five elements: (1) publication; (2) falsity; (3) the statement was made with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) the statement must be defamatory." Turner v. Wells, 879 F.3d 1254, 1262 (11th Cir. 2018). "To be defamatory, a statement must be "'of and concerning'" the plaintiff and must also "'expose [the] plaintiff to hatred, ridicule, or contempt or injure[ ] his business or reputation or occupation.'" Frank v. Fine, No. 6:23-CV-2043-PGB-RMN, 2024 WL 473718, at *2 (M.D. Fla. Jan. 5, 2024) (quoting Parekh v. CBS Corp., 820 F. App'x 827, 833 (11th Cir. 2020)),

report and recommendation adopted, No. 6:23-CV-2043-PGB-RMN, 2024 WL 473720 (M.D. Fla. Jan. 19, 2024).

Some statements, such as statements of pure opinion, cannot form the basis of a defamation claim. See Turner, 879 F.3d at 1262 (citing Florida law). A statement of fact is one which can be proven true whereas an opinion cannot. See Michel, 816 F.3d at 697 (explaining difference between statements of opinion and statements of fact, noting that statements of fact are "readily capable of being proven true or false"). Whether a statement is one of fact or opinion is a question of law for the Court to decide. Turner, 879 F.3d at 1262-63. In making its determination, the Court should consider the statements in their totality and consider any context or circumstances surrounding the statement, including the medium in which the statement was disseminated. See id.; see also From v. Tallahassee Democrat, Inc., 400 So. 2d 52, 57 (Fla. 1st DCA 1981).

Public figures face greater obstacles in alleging a defamation claim. Specifically, a public figure must allege a declarant made a defamatory statement with "actual malice," a standard which has been interpreted as meaning with actual knowledge of the statement's falsity or with reckless disregard for its veracity. Turner, 879 F.3d at 1273. A public figure is often characterized as someone who voluntarily places themselves in positions which invite public scrutiny and has greater access to media outlets or mass

communication to combat any defamatory remarks. See id. at 1272. Whether a litigant is a public figure for purposes of a defamation action is a question of law for the Court. Mile Marker, Inc. v. Petersen Publ'g, L.L.C., 811 So. 2d 841, 845 (Fla. 4th DCA 2002).

By voluntarily entering the race for public office, Plaintiff is properly classified as a public figure. Plaintiff has adequately provided evidence that Defendants published statements. and the statements were false insomuch as they, among other things, claimed Plaintiff fabricated being sexually assaulted. On the record before the Court, a reasonable jury could find Plaintiff was sexually assaulted after her bachelorette party. A reasonable jury could find that Plaintiff willingly engaged in sexual intercourse with her alleged assailant. There is no way it can be conclusively proven what happened and no jury could say with the requisite specificity that either party was lying. As previously stated, there is also no evidence of actual malice.

Defendants are entitled to share their belief Plaintiff lied to cover up an act of infidelity. Plaintiff is free to respond that Defendants' opinions are biased because of their relationship with Plaintiff's political rivals. What is clear is that both positions are now opinions.

Plaintiff's claim for defamation by implication fails for similar reasons. A claim for defamation by implication imposes liability on a defendant who

"juxtaposes a series of facts so as to imply a defamatory connection between them, or creates a defamatory implication by omitting facts[.]" <u>Jews For Jesus, Inc. v. Rapp</u>, 997 So. 2d 1098, 1108 (Fla. 2008). This claim provides relief for an aggrieved party though the falsity element of a defamation claim is not technically met so long as the "gist" misleads the listener. Because there is no provable mistruth there is no defamation.

    4.    Sovereign Immunity

Many of the counts are brought against Defendant Cline in his individual capacity. Florida only allows suit against officers or employees of state agencies (or its subdivisions) if the act was not within the scope of his employment or was done in "bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a). As previously explained, Plaintiff has not offered evidence from which a reasonable juror could conclude that Defendant Cline acted in bad faith or with malice. His disclosure was, at worst, misguided and ultimately harmless. A records request pertaining to Plaintiff was made when she declared herself a candidate for public office. The report was ordered to be released. Everyone knew who the alleged victim was despite redaction. Moreover, Defendant Cline went out of his way to alert Plaintiff <u>before</u> its release, which is why Plaintiff was even allowed to litigate

- 15 -

its release in state court. This added protection was uniquely afforded to Plaintiff and does anything but show bad faith.

Finally, it is beyond dispute Defendant Cline came into possession of the report because of his role as a lawyer acting as undersheriff for SJSO. He disclosed that report to Judge Mendoza, the commissioner, and Joshua Woolsey in that role. Defendant Cline is protected in his individual capacity.

SJCO stands in a similar position, in so much as Plaintiff asserts an invasion of privacy. All disclosures in this case came through Defendants' roles as law enforcement officers and cannot be used as basis for an invasion of privacy claim. See Gill v. Judd, No. 8:15-CV-840-MSS-AEP, 2016 WL 10676096, at *8 (M.D. Fla. Mar. 23, 2016), order clarified, No. 8:15-CV-840-MSS-AEP, 2016 WL 10675898 (M.D. Fla. June 21, 2016), and aff'd sub nom. Gill as Next Friend of K.C.R. v. Judd, 941 F.3d 504 (11th Cir. 2019).

5.      Section 1983 and Qualified Immunity

"§1983 remedy broadly encompasses violations of federal statutory as well as constitutional law." Maine v. Thiboutot, 448 U.S. 1, 4. To "prevail on a civil rights action under § 1983, a plaintiff must show that he or she was deprived of a federal right by a person acting under color of state law." Griffin v. City of Opa-Locka, 261 F.3d 1295, 1303 (11th Cir. 2001).

"Qualified immunity protects from civil liability government officials who perform discretionary functions if the conduct of the officials does not

violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Nolin v. Isbell, 207 F.3d 1253, 1255 (11th Cir. 2000) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "[Qualified] immunity protects all but the plainly incompetent or one who is knowingly violating the law." White v. Pauly, 137 S.Ct. 548, 551 (2017) (internal quotations and citation omitted). The purpose of qualified immunity "is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation. . . ." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002).

For qualified immunity to apply, "a public official must first demonstrate that he was acting within the scope of his or her discretionary authority." Jones v. Fransen, 857 F.3d 843, 851 (11th Cir. 2017) (citation omitted). If this is established, the burden shifts to the plaintiff "to demonstrate that qualified immunity is inappropriate." Id. To do that, the plaintiff must show that when viewed in the light most favorable to him, the facts demonstrate the individual defendant violated the plaintiff's constitutional rights, and those rights were clearly established at the time of each individual defendant's actions. See id.; see also Alcocer v. Mills, 906 F.3d 944, 951 (11th Cir. 2018) (Courts "must be careful to evaluate a given defendant's qualified-immunity claim, considering only the actions and omissions in which that particular defendant engaged.").

There are three ways that a right is "clearly established" for purposes a

qualified immunity analysis:

> (1) case law with indistinguishable facts clearly
> establishing the constitutional right; (2) a broad
> statement of principle within the Constitution,
> statute, or case law that clearly establishes a
> constitutional right; or (3) conduct so egregious that a
> constitutional right was clearly violated, even in the
> total absence of case law.

Lewis v. City of W. Palm Beach, 561 F.3d 1288, 1291–92 (11th Cir. 2009)

(internal quotations and citations omitted). The guiding principle is that the

"contours of the right must be sufficiently clear that a reasonable official

would understand that what he is doing violates that right." Wilson v. Layne,

526 U.S. 603, 615 (1999) (internal quotations and citation omitted); see also

Jones v. Dothan, 121 F.3d 1456, 1460 (11th Cir. 1997) (reiterating that public

officials are not obligated to draw analogies from previously decided cases to

determine the legality of their conduct). However, it is not necessary that the

specific action in question has been previously declared unlawful. Id. "An

official sued under § 1983 . . . cannot be said to have violated a clearly

established right unless the right's contours were sufficiently definite that

any reasonable official in the [official's] shoes would have understood that he

was violating it." Plumhoff v. Rickard, 572 U.S. 765, 778–79 (2014).

For this Court to deny qualified immunity, a plaintiff must offer facts

demonstrating the individual defendant(s) violated the plaintiff's

constitutional rights, and those rights were clearly established at the time of each individual defendant's actions. <u>Fransen</u>, 857 F.3d at 851. To start, Plaintiff offers no case law establishing a constitutional right to have one's name withheld or location redacted when making a claim of sexual assault. There is no broad principle emanating from the Constitution that would cover the conduct in this case, nor was the conduct egregious—in fact, it is not clear any federal constitutionally guaranteed rights were violated at all. There is no reasonable expectation of privacy in the business records of third parties exposed to employees in the ordinary course of business. <u>Johansson v. Emmons</u>, No. 609-CV2053-ORL-19KRS, 2010 WL 457335, at *5 (M.D. Fla. Feb. 4, 2010). Without a violation of a substantive right of due process, there can be no liability for failure to intervene or municipal liability pursuant to <u>Monell</u>.[1] <u>Omar v. Hillsborough Cnty. Pub. Sch. Dist.</u>, No. 8:24-CV-2427-CEH-SPF, 2025 WL 2780220, at *5 (M.D. Fla. Sept. 30, 2025) ("Plaintiff has failed to adequately allege that a constitutional violation occurred. Therefore, she has failed to allege a Monell claim as well.").

Accordingly, after due consideration, it is

**ORDERED:**

---

[1] <u>Monell v. Department of Social Services of the City of New York</u>, 436 U.S. 658, 694 (1978).

1.     Defendants' Motion for Summary Judgement (Doc. 160) is

**GRANTED**.

2.     The Parties' Time-Sensitive Motion to Continue Trial (Doc. 174)

is **DENIED as moot**.

3.     The Clerk of the Court shall enter judgment in favor of

Defendant Robert Hardwick, in his official capacity as Sheriff of St.

Johns County Florida, and Matthew Cline, then terminate all pending

motions and close the file.

**DONE** and **ORDERED** in Jacksonville, Florida this  *9th*  day of

February, 2026.

_____
BRIAN J. DAVIS
United States District Judge

2
Copies furnished to:

Counsel of Record
Unrepresented Parties